Argued and submitted July 7, affirmed September 22, reconsideration denied
December 1, 1993, petition for review denied January 18, 1994 (318 Or 326)

In the Matter of
Dawnelle Graham,
Rashelle Frady, Christal Charles
and Autumn Holt, Minor Children.

STATE ex rel JUVENILE DEPARTMENT
OF MULTNOMAH COUNTY,
*Respondent,*

*v.*

Mary CHARLES,
*Appellant.*

(8912-83366; CA A78417)
859 P2d 1162

Paul Newton, Portland, argued the cause for appellant. With him on the brief was Metropolitan Public Defender, Portland.

Douglas F. Zier, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Chief Judge, and Riggs and Durham, Judges.

RICHARDSON, C. J.

## RICHARDSON, C. J.

Mother appeals an order terminating her parental rights in her four children.[1] ORS 419.523. We review *de novo*, ORS 419.561, and affirm.

In March, 1989, CSD investigated complaints of child abuse and neglect regarding mother's children.[2] Although the caseworker did not find that the children were suffering from physical abuse, they were living in squalid conditions. The house was strewn with garbage and infested with fleas. The children had head lice and scabs on their faces and were very dirty. CSD initially offered medical referrals for the children and homemaker services for mother. However, after several follow-up visits, CSD closed the case because mother declined further services and CSD could not substantiate its suspicions that she abused drugs.[3]

In December, 1989, CSD received a referral from a local hospital that mother's two-month-old child was failing to thrive due to neglect. After a preliminary hearing, that child was placed in a foster home. CSD offered mother services and entered into a service agreement with her.

Although CSD provided various services to mother, her participation was, at best, inconsistent and passive. The household environment and the condition of the two children who were living with her did not improve. Caseworkers and health professionals who were providing services to mother became increasingly concerned about her drug addiction and her resulting inability to care for the children effectively. In March, 1990, a referee ordered mother to sign a service agreement with CSD containing specific requirements, including evaluation for substance abuse, abstention from alcohol and drugs and participation in parenting classes. Mother continued to have problems and, after she was

---

[1] Mother has four daughters. At the time of trial, the children's ages were nine, five, two and one. All of the children are in foster care, and the youngest child has never lived with mother.

[2] Between 1984 and 1989, CSD received several referrals regarding mother, but CSD could not substantiate the complaints.

[3] Testimony at the termination hearing established that mother has a long history of substance abuse. She has injected methamphetamine for many years and abused marijuana and alcohol.

arrested and convicted for possession of drugs, her two older children were made wards of the court.

Between May, 1990, and February, 1991, mother entered three drug treatment programs. Continuing concern about her addiction led to a new service agreement in February, 1991, which required mother to participate in "Project Stop," a drug treatment program. At that point, mother was pregnant with her fourth child. Despite treatment, she continued to test positive for drugs and was consequently discharged from the program. In June, 1991, she gave birth to her fourth child. The newborn child tested positive for methamphetamine and was immediately placed in foster care.

In July, 1991, mother was arrested and incarcerated for violating the terms of her probation resulting from the conviction for drug possession. Since her release from prison, she has continued to use drugs and alcohol. She also has been unable to retain a stable job and residence.

Mother's drug abuse has seriously affected her children, both physically and emotionally. Three of the children were exposed to drugs in utero. The youngest child is developmentally delayed as a result. The oldest child has been diagnosed with an adjustment disorder.[4] The second child suffers from post-traumatic stress disorder. Psychologists testified that the two youngest children have not formed lasting bonds with their mother. The evidence also indicates that, because of their physical or emotional problems, three of the children require additional special care and nurturing.

Mother's first three assignments of error focus on the applicability of the Oregon Rules of Civil Procedure (ORCP) to termination proceedings. She made several pretrial motions based on ORCP, all of which the juvenile court denied on the ground that ORCP do not apply to juvenile court proceedings. On appeal, mother argues, in the abstract, that ORCP apply and, particularly, that the court erred in denying her motions under the rules for discovery, to dismiss, and to make the petition more definite and certain.

---

[4] The oldest child also was diagnosed as having been physically and sexually abused by someone other than mother.

Assuming, without deciding, that ORCP apply in a termination case, mother points to no evidence that was withheld from her or to any prejudice to her case by the court's ruling on her ORCP motions. Her only apparent argument is that the court's rulings denied her the procedural protections required by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

■■ In a termination case, due process requires that the proceedings be "fundamentally fair." *Santosky v. Kramer*, 455 US 745, 753-54, 102 S Ct 1388, 71 L Ed 2d 599 (1982); *State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189, 796 P2d 1193 (1990). In *Geist*, the court elaborated:

> "The essence of fundamental fairness is the opportunity to be heard at a meaningful time and in a meaningful manner. Fundamental fairness emphasizes factfinding procedures. The requirements of notice, adequate counsel, confrontation, cross-examination, and standards of proof flow from this emphasis. Fundamental fairness is flexible and calls for such procedural protections as the particular situation demands." 310 Or at 189-90. (Citations omitted.)

The burden is on mother to establish that the juvenile court's refusal to apply ORCP prejudiced her case to the extent that she did not receive a fair hearing. *See State ex rel Juv. Dept. v. Geist, supra*, 310 Or at 191.

■ On *de novo* review, we are satisfied that the termination proceedings were fundamentally fair. Although mother's discovery motions were denied, she received most of the information that she requested either before or during trial. Mother sought depositions of the foster parents, CSD caseworkers and personnel, CSD case files, log notes, internal procedural rules and adoptability studies. She had access to CSD files and procedural rules before the hearing. CSD agreed that mother's attorney could discuss the case with caseworkers before the hearing and, at trial, mother had the opportunity to cross-examine the individuals she sought to depose. She did not request a continuance because of unexpected or surprising testimony by potential deponents. When the single evidentiary surprise—a journal kept by the foster mother of three of the children—was discovered during trial and offered by the state, mother's attorney had a full week to

look at the journal before cross-examining the foster parent on that issue.

Mother requested disclosure of adoptability studies and her request was denied. She has not shown why those studies are relevant or how they would assist in her defense.[5]

In her fourth assignment, mother argues that the court erred in admitting drug and alcohol treatment records after she had revoked her consent to disclose and to redisclose those records.[6] We need not address mother's arguments because, on *de novo* review, we do not consider the written records that are in contention.

■       In her fifth assignment, mother argues that the court erred in requiring her to testify in the state's case-in-chief. She contends that the Fifth Amendment to the United States Constitution protects a parent from testifying against herself in a termination case, because termination involves a parent's liberty interests and the severity of the findings resulting in termination are "akin to guilt." She asks that we overrule an earlier holding that, in termination proceedings, the Fifth Amendment right against self-incrimination does not extend to all testimony by a parent but is limited to statements that tend to expose the parent to criminal liability. *State ex rel Juv. Dept. v. Wade*, 19 Or App 314, 527 P2d 753, *on recon* 19 Or App 835, 528 P2d 1382 (1974), *rev den, appeal dismissed* 423 US 806 (1975), *overruled on other grounds* 24 Or App 601, 609, 547 P2d 175, *rev den, cert den* 429 US 907 (1976).

In *Wade*, we said:

"Because the termination of parental rights is an action ostensibly designed to promote the best interests of children rather than to penalize parents, we are unwilling to equate such an act with the deprivation of personal liberty which results from a criminal conviction." 19 Or App at 327.

Although cases since *Wade* have recognized the liberty interests of parents in a termination case and the severity of the

---

[5] The testimony regarding the adoptability studies is confusing. It is unclear whether or to what extent the studies had been completed at the time of the hearing.

[6] Although mother originally objected to the submission of all drug treatment records, during trial she waived objection to all but two sets of records—those from TASC and De Paul treatment centers. Only those records are in contention.

possible outcome,[7] termination proceedings have not been placed on the same footing with criminal proceedings. *See State ex rel Juv. Dept. v. Geist, supra.*[8] We decline to do so by extending Fifth Amendment protection in a termination proceeding.

■      In her sixth assignment, mother contends that CSD did not make reasonable efforts to assist her, particularly with her drug problems.[9] We disagree. At the time of the termination hearing, CSD had been providing mother with assistance for nearly three years. Since 1989, CSD workers counseled mother to get treatment for her drug and alcohol addiction. CSD referred her to at least four different drug treatment programs and cooperated with the treatment counselors from the programs mother attended. Because mother's drug abuse continued after initial referrals, later service agreements with CSD required her to obtain treatment. In addition to CSD's efforts to help mother overcome her drug abuse, it provided many support services, including home visitation, homemaking services, parent training classes, medical referrals, child visitation services, intensive

---

[7] *See, e.g., Santosky v. Kramer, supra; State ex rel Juv. Dept. v. Geist, supra.*

[8] In *Geist*, the Supreme Court refused to apply the criminal standard of adequacy of counsel to a termination proceeding. In discussing the difference between criminal and termination cases, the court echoed our rationale in *Wade*:

"In a termination case, for example, the issue is not whether a parent should be 'punished' by a termination of his or her parental rights; rather, the issue is whether the statutory grounds for termination have been established by clear and convincing evidence, ORS 419.525(3), and, if so, whether the child's best interest will be served by termination of the parent-child relationship." 310 Or at 189.

[9] The juvenile court made findings and conclusions based on ORS 419.523 (3)(e), which provides:

"The rights of the parent or parents may be terminated as provided in subsection (1) of this section if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"* * * * *

"(e) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

family service assessments, and referrals for psychological evaluations. CSD's efforts to assist mother with her drug and other problems were reasonable.

■ ■  In her final assignment, mother argues that the juvenile court erred in reopening the case to hear additional evidence. The reopening of a case for additional evidence rests in the discretion of the trial court, and the court's decision will not be disturbed unless it has manifestly abused that discretion. *Greco v. Tehan*, 256 Or 595, 597, 475 P2d 63 (1970); *Arbogast et al v. Pilot Rock Lbr. Co.*, 215 Or 579, 595, 336 P2d 329 (1959); *Kosmos v. Bergquist*, 51 Or App 451, 625 P2d 1374 (1981). The juvenile court granted the state's request to reopen before the court had made a determination in the case. Three months had passed since closing arguments, and the events that followed the closing arguments were relevant to the determination of whether mother was currently fit to care for the children. Evidence presented after the case was reopened was limited to events occurring after closing arguments. Mother received notice of the state's request and had the opportunity to oppose it. She also had the opportunity to put on additional evidence and to cross-examine the state's witnesses. Mother did not claim surprise, request a continuance or offer any evidence of her own. The juvenile court did not abuse its discretion by reopening the case and allowing additional evidence.[10]

Affirmed.

---

[10] Mother does not assign error to the court's ultimate ruling that the termination of her parental rights is in the best interests of the children.