Argued and submitted June 12, reversed August 2, 1995, petition for review allowed
by opinion February 15, 1996
See 322 Or 599, 910 P2d 1107 (1996)

In the Matter of
Christopher Troy Rollins, a Child.

STATE ex rel
CHILDREN'S SERVICES DIVISION,
*Respondent,*

*v.*

Tracy Lorraine ROLLINS,
aka Tracy Lorraine Rimmer,
*Appellant.*

(941947; CA A86739)

900 P2d 1072

Stephen A. Lovejoy argued the cause for appellant. With him on the brief was Jenny Cooke.

Pamela G. Wood, Assistant Attorney General, argued the cause for respondent. With her on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

RIGGS, P. J.

Mother appeals from a judgment terminating her parental rights to her son (child). ORS 419A.200(1). We review *de novo*, ORS 419A.200(5); ORS 19.125(3), and reverse.

The facts are undisputed. Mother has a long history of drug use. She began smoking marijuana and using cocaine when she was a teenager in California. At age 18, she participated in a 30-day inpatient drug treatment program for cocaine abuse and attended a 14-day relapse program two years later. In 1989, when mother was 25, she married Scott Rimmer and gave birth to a daughter.[1] She used drugs during her pregnancy and, toward the end of her term, spent six weeks in a drug treatment facility. Mother resumed using drugs after the daughter was born. In 1990, mother and Rimmer moved to Oregon and were divorced soon afterwards. Rimmer's second wife adopted the daughter in 1994.

In June 1991, mother was charged with possession of a controlled substance (methamphetamine). In November, she pled guilty to possession of methamphetamine and a separate charge of forgery and was sentenced to 18 months of probation. Her probation conditions included 30 days of custody in the Coos County Jail and participation in a drug treatment program. In November 1992, when mother was five months pregnant with child, she was arrested and charged with manufacture, delivery and possession of a controlled substance (cocaine). She was convicted for delivery of a controlled substance and sentenced to 24 months of probation, with six months custody at Oregon Women's Correctional Center (OWCC). Mother gave birth to child while she was incarcerated and he was placed in foster care. While she was in custody, mother participated in a pregnancy/postpartum group. Upon release from OWCC, mother and child lived with the Foultner family for three months. Although mother occasionally drank alcohol, Tamara Foultner testified that mother "was a very, very, very good mother" and that child was never abused or neglected. After

---

[1] Mother's relationship with daughter is not at issue in this proceeding. We use the term "child" to refer only to her son.

mother moved to her own apartment, Foultner visited her and observed that child was being well cared for.

In November 1993, mother was again arrested and charged for drug offenses. Child, who was sleeping in his room at the time of the arrest, was described as "perfectly normal" in medical, physical and developmental condition, and there was no evidence of abuse. While mother was in custody at the Lincoln County Jail awaiting trial, CSD contacted her for the first time regarding child. Mother met with a CSD investigator and the case was then referred to Church, a CSD caseworker. Church arranged four visits between mother and child and mother's behavior towards child during their visits was reported as "appropriate." In March 1994, mother was convicted of delivery of a controlled substance, and sentenced to 24 months in the custody of the Department of Corrections.

On April 4, 1994, CSD notified mother that it was going to seek termination of her parental rights. At that time, child was 12 months old. Mother requested visitation with child, but CSD was informed by OWCC that contact visits were not permitted. The agency decided that the remaining option, "no-contact" visitation,[2] would not be in child's best interests. Mother did not make further visitation requests, but she did communicate with child's foster family directly. In May 1994, CSD filed a petition for termination of mother's parental rights.

Mother voluntarily entered the Summit program at Shutter Creek Correctional Institute in September 1994.[3] The Summit program is an intensive, six-month "boot camp," where inmates participate in daily work assignments or educational classes and receive drug and alcohol education. The program is very regimented and inmates who complete the program are released from custody. At the time of the termination hearing, in November 1994, mother had been in the program two months and was receiving above average grades. Noel Parker, a drug and alcohol counselor for the

---

[2] Church testified that "no-contact" visitation would entail holding the child up to a glass window at the prison, with no actual contact between mother and child.

[3] Mother originally entered the program in April 1994, but had to leave after four days due to a medical condition.

Summit program, testified at the hearing that it was "too early to tell" whether mother would suffer a relapse, but indicated that she had as good a chance as anyone to remain "clean and sober." Parker also testified that Summit graduates are required to attend one year of aftercare treatment and that women, such as mother, with "no social structure to return to" are encouraged to move into transitional housing in order to develop a support network.

In its petition to terminate mother's parental rights, the state claimed that mother was "unfit by reason of conduct or condition seriously detrimental to the child," and that "integration of the child into the mother's home is improbable in the foreseeable future due to conduct or conditions not likely to change." ORS 419B.504. The state alleged, *inter alia*, that mother was unfit by reason of her continued criminal activity resulting in incarceration, her habitual use of alcohol and controlled substances and her inability to adjust her conduct and circumstances to make return of child possible. *See* ORS 419B.504.[4] The trial court granted CSD's petition, finding, by clear and convincing evidence, that it had proved its allegations under ORS 419B.500 and ORS 419B.504. Specifically, the court's decision appears to have been based on its conclusion that mother's conduct and circumstances would not change in the foreseeable future. Although the court found that mother testified "emotionally and persuasively" regarding her desire to change her life, it

---

[4] As pertinent to this case, ORS 419B.504 provides that parental rights may be terminated if the court finds that the parent or parents are unfit

"by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited the following:

"* * * * *

"(3) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.

"* * * * *

"(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

Termination must also be in the best interests of the child. ORS 419B.500.

nonetheless decided that any efforts would not have an appreciable effect on mother's drug problem:

> "[T]he history of mother's life demonstrates that she had such an intensive and pervasive drug problem that *the court does not believe that further efforts or current efforts will result in mother being drug free on a lasting basis.* Mother appears to do well in a controlled or structured environment, but when she is not in such an environment, her history has been use and abuse of controlled substances resulting in incarceration, followed by further attempts at treatment.
>
> "* * * * *
>
> "[Mother] is not presently able to meet the physical and emotional needs of her child because she finds herself incarcerated once more. *It is unlikely that mother's problem will be under control in the foreseeable future to the extent that she would be able to perform the role of a parent with minimal adequacy.*" (Emphasis supplied.)

■■ On *de novo* review, we disagree with the trial court's decision to terminate mother's parental rights and reverse the judgment. When, as here, the state petitions to terminate parental rights pursuant to ORS 419B.504, it must prove, by clear and convincing evidence, that the parent is presently "unable to meet the physical and emotional needs of the child *and* that the present inability is unlikely to change in the foreseeable future." *State ex rel Juv. Dept. v. Pennington,* 104 Or App 194, 196, 799 P2d 694 (1990), *rev den* 311 Or 166 (1991) (interpreting *former* ORS 419.523(3)).[5] After reviewing the record, we are not independently satisfied that the state has proven that the conduct and conditions surrounding mother's present inability to meet child's needs are unlikely to change in the foreseeable future.

It is undisputed that the circumstances that prompted the state to seek termination of parental rights stemmed from mother's abuse of and dependency on controlled substances.[6] At the time of the hearing, however,

---

[5] ORS 419.523(3) was repealed by Oregon Laws 1993, chapter 33, section 373. However, the text of that provision was reenacted at ORS 419B.504.

[6] We note at the outset that there is no evidence that mother lacks parenting skills; she was described as a "doting" mother and child was always reported to be in good health and developing normally, with no signs of neglect or abuse. *See State ex rel Juv. Dept. v. Devore,* 108 Or App 426, 816 P2d 647 (1991) (termination justified, in part, by mother's inability to grasp basic parenting skills).

mother had been drug-free for more than a year. She had voluntarily entered the Summit program, described as "the best shot" the state of Oregon has to give a person in the corrections system, and was making progress in her efforts to change her drug dependency. Parker testified that mother was making a "serious effort" and was compliant in all respects with the terms of the program. Mother was scheduled to graduate and be released from custody four months from the time of the hearing, in March 1995, and was not facing a prolonged period of incarceration.[7]

■      We also note that mother's interaction with social agencies has not been of such "extended duration" that it would reasonably appear "that no lasting adjustment can be effected." ORS 419B.504(5). In the time surrounding child's birth and infancy, mother had minimal contact with social agencies. She participated in a pregnancy/postpartum group, which included some drug and alcohol education, while she was incarcerated at OWCC in early 1993. Mother testified that the class consisted of "a bunch of us pregnant women * * * who complained about what was going on in the institution." After her release in May 1993, mother was referred to the Lincoln County Council on Alcohol and Drug Abuse. Mother did not use that support service and when she was finally prompted to meet with a counselor, the appointment was canceled due to mother's November 1993 arrest. CSD first became involved with mother after the November 1993 arrest, when child was seven months old, and the agency petitioned for termination five months later. This is not a situation in which available social programs have been exhausted with no appreciable or lasting effect. *See State ex rel Juv. Dept. v. Charles*, 123 Or App 229, 859 P2d 1162 (1993), *rev den* 318 Or 326 (1994) (parental rights terminated after three years of intensive CSD assistance with no improvement).

■      Mother has taken voluntary steps to adjust her circumstances and we believe that "she is entitled to a chance to show that it is permanent." *Pennington*, 104 Or App at 201.

---

[7] Church testified that mother's original 24-month sentence was a motivating factor behind the state's decision to file the termination petition. Were mother to serve her full sentence without completing the Summit program, she would not be due for release until March 1996.

The state has not demonstrated by clear and convincing evidence that integration of child into mother's home "is improbable in the foreseeable future due to conduct or conditions unlikely to change." ORS 419B.504. Accordingly, the judgment terminating mother's parental rights must be reversed. Our conclusion here does not mean that child must be immediately returned to mother. As we noted in *State ex rel Juv. Dept. v. Herman*, 69 Or App 705, 710 n 2, 687 P2d 812 (1984), "[CSD] retains jurisdiction over the child and may make an appropriate plan regarding * * * reintegration into the family."[8]

Reversed.

---

[8] Church testified that the agency generally looks for a parent to maintain sobriety in the community for approximately a year before it will consider reintegrating the child.