Submitted on remand from the Oregon Supreme Court March 18, reversed April 17, 1996

In the Matter of
Christopher Troy Rollins, a Child.

STATE ex rel CHILDREN'S
SERVICES DIVISION,
*Respondent,*

*v.*

Tracy Lorraine ROLLINS,
aka Tracy Lorraine Rimmer,
*Appellant.*

(941947; CA A86739)

914 P2d 1094

Stephen A. Lovejoy and Jenny Cooke for appellant.

Theodore R. Kulongoski, Attorney General, Virginia L. Linder, Solicitor General, and Pamela G. Wood, Assistant Attorney General, for respondent.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

RIGGS, P. J.

**RIGGS, P. J.**

Our previous opinion in this case, *State ex rel CSD v. Rollins*, 136 Or App 7, 900 P2d 1072 (1995), has been remanded to us for reconsideration by the Supreme Court. 322 Or 599, 910 P2d 1107 (1996).

The facts are adequately set forth in our previous opinion and are only briefly summarized here. This case involves the parental rights of a mother who has a history of drug addiction and incarceration. In May 1994, Children's Services Division (CSD)[1] filed a petition to terminate mother's parental rights to her infant son after mother had been convicted and sentenced to 24 months in prison for drug-related offenses. The agency moved for termination on the basis of ORS 419B.504(3) and (5).[2] The trial court terminated mother's parental rights upon finding that

> "[mother] is presently not able to meet the physical and emotional needs of her child because she finds herself incarcerated once more. It is unlikely that mother's [drug] problem will be under control in the foreseeable future to the extent that she would be able to perform the role of a parent with minimal adequacy."

---

[1] The "duties, functions and powers" of CSD have since been vested in the newly created State Office for Services to Children and Families. ORS 409.185.

[2] ORS 419B.504 provides, in part:

"The rights of the parent or parents may be terminated * * * if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct, the court shall consider but is not limited to the following:

"* * * * *

"(3) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired.

"* * * * *

"(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

On *de novo* review, ORS 419A.200(5); ORS 19.125(3), we reversed the court's decision because we were not independently satisfied that CSD had demonstrated that mother's circumstances were unlikely to change in the foreseeable future. *Rollins*, 136 Or App at 14. Our decision was based primarily on evidence that, at the time of the termination proceeding, mother had entered the Department of Correction's Summit "boot camp" program and was reported to be fully cooperating and making a serious effort to eliminate her drug dependency. *Id.* at 12-13. In our earlier opinion, we observed that the evidence of mother's previous contact with support agencies had not been so extensive that it could reasonably be said, by a clear and convincing standard, that her current efforts to control her drug addiction were destined to be unsuccessful. *Id.* at 13. To illustrate that point, we cited *State ex rel Juv. Dept v. Charles*, 123 Or App 229, 859 P2d 1162 (1993), *rev den* 318 Or 326 (1994), in which termination was warranted for a parent whose long and *persistent* history with CSD demonstrated that she was unable to make any permanent change in her circumstances.[3]

The Supreme Court criticized the manner in which we assessed mother's prior history with assistance programs and expressed concern that our analysis would lead to "interpretational problems in the trial courts." *Rollins*, 322 Or at 603. The court went on to describe several propositions that it believed could be read from our analysis:

> "(1) If the moving agency has been involved with the parent and child for only a short period, parental rights may not be terminated. (2) If all available social programs have not been exhausted, whatever their likely effect, parental rights may not be terminated. (3) If the moving agency cannot justify its position based entirely on events that have occurred since the agency became involved with the parent and child, parental rights may not be terminated." *Id.*

It then concluded that "if the Court of Appeals relied for its disposition in this case on any of the foregoing propositions, it erred." *Id.*

---

[3] CSD was the sole agency providing services in *Charles*; however, we do not read the case to say that the agency moving for termination must establish that it *alone* made reasonable efforts to assist the parent.

We agree with the Supreme Court that, had we relied on any of those propositions, our earlier opinion would have been wrong. However, none of them formed any part of our decision to reverse the judgment of termination. We did not base our decision solely on the duration of mother's contact with CSD or on the events that occurred after CSD became involved with the case, nor did we expect CSD to demonstrate that *all* available social programs had been exhausted with no lasting effect. We have reviewed all of the evidence before us, including the duration, intensity and quality of mother's *entire* history with drug treatment programs, support agencies and other forms of assistance, and simply do not share the trial court's conviction that the state proved by clear and convincing evidence that mother's current efforts to change her circumstances were destined to meet with failure.

As the Supreme Court stated in *Santosky v. Kramer*, 455 US 745, 753, 102 S Ct 1388, 71 L Ed 2d 599 (1982):

> "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."[4]

The primary factor that has prevented mother from caring for child is her drug addiction. If that impediment is removed, the evidence persuades us that, in all other respects, mother has adequate skills to provide for the well being of child. She was described at trial as a loving parent and there was no evidence that she physically abused or neglected child. After reconsideration, we continue to conclude that the judgment terminating mother's parental rights should be reversed.

Reversed.

---

[4] In *State ex rel Juv. Dept. v. Farrell*, 58 Or App 258, 648 P2d 401, *rev den* 293 Or 521 (1982), *cert den* 460 US 1087 (1983), we held that the preponderance of the evidence standard for termination cases, set forth in *former* ORS 419.525(2), *repealed by* Or Laws 1993, ch 33, § 373, was unconstitutional in the light of *Santosky*. In 1985, the legislature changed the standard to require the state to prove the facts supporting termination by clear and convincing evidence. Or Laws 1985, ch 820, § 1.