Argued and submitted July 17, reversed and remanded with instructions September 11, petition for review denied November 26, 1996 (324 Or 395)

In the Matter of
Malachi Eugene Ettinger, a Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Michelle ETTINGER,
*Respondent.*

(JV900020B; CA A92055 (Control))

In the Matter of
Kimberly Lynn Williams, aka Ettinger, a Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Michelle ETTINGER,
*Respondent.*

(JV900021B; CA A92056)

In the Matter of
Kodean Lyle Ettinger, a Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Michelle ETTINGER,
*Respondent.*

(JV920107A; CA A92057)

In the Matter of
Chadwick Gael Ettinger, a Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Appellant,*

*v.*

Michelle ETTINGER,
*Respondent.*

(JV920108A; CA A92058)

923 P2d 1290

Mary H. Williams, Assistant Attorney General, argued the cause for appellant. With her on the brief were Theodore

R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

J. R. Perkins, III, argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

## DE MUNIZ, J.

The state appeals from a judgment denying termination of mother's parental rights to her four children. ORS 419B.500. We reverse.

This case presents a tragic example of the legacy of substance abuse that is passed from one generation to the next. Mother was born on April 5, 1970. In 1981, she witnessed her father commit suicide while he was under the influence of alcohol and "downers." Mother's own mother tried to kill herself by taking pills with whiskey when mother was nine or 10 years old. At the age of nine, mother began smoking marijuana and progressed to injecting cocaine and methamphetamine by the time she was 12. At 15, she began taking LSD, and at 17, she injected a heroin-cocaine mix. She dropped out of school in the tenth grade.

During much of their lives, mother's children have been under the juvenile court's jurisdiction and in the custody of the State Office for Services to Children and Families. Mother had her first child at the age of 17, and her most recent at 21, using drugs during her first three pregnancies. She was diagnosed with a personality disorder as early as 1991, but resisted mental health counseling until 1993.

Mother testified that she has not used drugs since 1989, and that in 1991 she completed a 10-month drug treatment program. By August 1993, she was apparently participating more consistently in drug rehabilitation. In the opinion of various medical and social service professionals, however, mother severely lacks parenting skills. Although occasionally attending workshops and training sessions, she has generally resisted advice in this area.

Mother also has a history of brief relationships with men who are involved in alcohol and drugs and who have mentally or physically abused her. At least one of these men also physically abused her children. At the time of the termination proceedings in December 1995, she was living with David Juarez, an alcoholic who was arrested two months before for assault on mother and possession of a controlled substance. A month before that, mother entered a domestic

violence shelter, claiming that Juarez had hit her. She later claimed to have lied about those allegations.

In the past, mother has also invited into her home other individuals threatening to her physical safety and that of her children—including a woman who heard voices and had hallucinations and a homeless man who later kicked in her window and ran a patrol car into a police officer when he was arrested.

Since 1993, mother has been unable to maintain a stable, consistent residence. Her electricity was shut off in February 1993 due to her financial problems. In early 1994, she was evicted from her apartment and was homeless from April through October of that year. In January 1995, she was "kidnapped" from a camper trailer in Oregon, dropped off near the Canadian border, and hitch-hiked a ride to the Tri-Cities area in southern Washington, where she remained for two weeks without contacting the police, her family or her children. When she did have a home, it was usually with one of the men who abused her.

Mother has few employment skills and little education. She last worked in 1993 for three months as a cocktail waitress. At the time of the termination hearing, she planned to move her children into the three-bedroom trailer she shares with Juarez and his three children, who were ages six, seven and nine at the time. Juarez has been convicted three times of driving under the influence of intoxicants, has attended two treatment programs and continues to drink.

Each of mother's four children has suffered varying degrees of damage as a result of her behavior and circumstances. Her two oldest children, who were seven and five respectively at the time of the hearing, were both physically abused by mother's ex-husband and sexually abused in foster care. Both have been diagnosed with emotional disturbances and personality disorders based on their relationship with mother and the chaotic nature of their lives. Both are also in desperate need of a stable home environment that provides a sense of security, predictability and nurturing. Mother's third child, who was four at the time of the hearing, was born in a Nevada jail and was removed from mother's care after about two years with her. He has since remained with the

same foster family. When the child arrived at the last foster home, he was rigid and withdrawn but eventually began showing affection and enjoying attention. Although he has never received counseling, he does well in school. After visiting his mother, however, he becomes rowdy and aggressive, often breaking and throwing away the gifts she gives him. The youngest child, who was three at the time of the hearing, exhibits similar behavior after mother's visits. He has been diagnosed as suffering from either an anxiety disorder or a post-traumatic stress disorder, and is also in desperate need of an environment with structure and consistency.

■ In December 1995, the state filed a petition to terminate mother's parental rights, on the grounds of unfitness, ORS 419B.504, and neglect, ORS 419B.506. The juvenile court denied the petition, finding that mother had been off drugs since 1989, exhibited good parenting skills with Juarez's children and maintained a stable home with Juarez. We review the juvenile court's decision *de novo*. ORS 419A.200(5); ORS 19.125(3); *State ex rel CSD v. Rollins*, 136 Or App 7, 9, 900 P2d 1072 (1995), *vacated* 322 Or 599, 910 P2d 1107, *on remand* 140 Or App 222, 914 P2d 1094 (1996).

■ We confine our analysis to ORS 419B.504, the only ground for termination asserted by the state on appeal. ORS 419B.504 provides, in part:

> "The rights of the parent or parents may be terminated as provided in ORS 419B.500 if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable in the foreseeable future due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

> "(1) Emotional illness, mental illness or mental deficiency of the parent of such nature and duration as to render the parent incapable of providing proper care for the child for extended periods of time.

> "* * * * *

> "(5) Lack of effort of the parent to adjust the circumstances of the parent, conduct, or conditions to make the

return of the child possible or failure of the parent to effect a lasting adjustment after reasonable efforts by available social agencies for such extended duration of time that it appears reasonable that no lasting adjustment can be effected."

Under ORS 419B.504, the state must prove by clear and convincing evidence that the parent is presently " 'unable to meet the physical and emotional needs of the child *and* that the present inability is unlikely to change in the foreseeable future.' " *Rollins,* 136 Or App at 12, *quoting State ex rel Juv. Dept. v. Pennington,* 104 Or App 194, 201, 799 P2d 694 (1990), *rev den* 311 Or 166 (1991) (emphasis in original). Additionally, the state must prove that termination is in the best interests of the child. ORS 419B.500; *Rollins,* 136 Or App at 11 n 4.

■ On *de novo* review, we conclude that the state has proved by clear and convincing evidence that mother is presently unable to care for her children's emotional needs and that her present inability is unlikely to change in the foreseeable future. Although apparently addressing her drug addiction, mother has not changed her life-long pattern of relationships with abusive men who have alcohol or drug problems. In 1991, mother was diagnosed as having a personality disorder with both "anti-social and dependent characteristics," which is linked to her history of destructive relationships. Mother consistently failed to seek help for this condition until 1993. At the time of the termination hearing in 1995, she was living with an alcoholic who was drinking and who had physically assaulted her. It is into this home she plans to move her children.

Although a history of unstable employment and living conditions cannot provide the sole basis for terminating parental rights, it may be considered in conjunction with a child's special needs for stability. *State ex rel Juv. Dept. v. Boren,* 105 Or App 599, 606, 806 P2d 149 (1991). Mother's children suffer from severe emotional disturbances and personality disorders, and have a special need for a stable, predictable and nurturing home environment. However, the record demonstrates that mother has neither the present ability nor the inclination to provide such an environment.

Mother acknowledges her lack of job skills. At the termination hearing, she expressed no plans to acquire job training, earn her high school diploma or seek a more stable living situation. She instead planned to stay at home in the Juarez trailer to be with her children. It is apparent that mother's pattern of relying on abusive men for a place to live is unlikely to change in the foreseeable future.

This case is similar to *State ex rel Juv. Dept. v. Geist*, 97 Or App 10, 775 P2d 843 (1989), *aff'd* 310 Or 176, 796 P2d 1193 (1990). There, the mother's children suffered from emotional and behavioral disturbances and were in need of a safe, nourishing and stable environment. *Id.* at 14. We upheld the termination of the mother's rights because her personality disorder prevented her from providing such a home. *Id.*[1]

We conclude that mother's inability to provide a stable, secure home is a "condition seriously detrimental" to her children, and their integration into her home is "improbable in the foreseeable future due to conduct or conditions not likely to change." ORS 419B.504. We also conclude that termination is in the children's best interests. ORS 419B.500; *see State ex rel Juv. Dept. v. Geist*, 310 Or 176, 189, 796 P2d 1193 (1990) (where parent is unable or unwilling to rehabilitate herself within a reasonable time so as to provide a wholesome and healthful environment, termination is in child's best interests).

■ Mother's apparent progress in addressing her drug addiction is admirable. However, even with that progress, she is barely able to care for herself, much less four children with severe emotional needs. In a termination case, the issue is not whether the parent should be punished, but whether termination is in the child's best interests when the statutory grounds for termination have been established. 310 Or at 189. The state proved that here.

---

[1] *See also State ex rel Juv. Dept. v DeVore*, 108 Or App 426, 432-33, 816 P2d 647 (1991) (termination justified where mother's personality disorder prevented her from changing lifestyle and avoiding inappropriate relationships); *State ex rel CSD v. Johnston*, 136 Or App 207, 210-11, 901 P2d 892, *rev den* 322 Or 193 (1995) (termination upheld where children were emotionally disturbed, and parents who had mental problems participated only sporadically in counseling with no appreciable effect).

Reversed and remanded with instructions to enter judgment terminating mother's parental rights.