## In the INTEREST OF N.F. and C.H., Minor Children, J.H., Mother, Appellant.

### No. 97–1083.

Court of Appeals of Iowa.

March 27, 1998.

Richard D. Stochl of Elwood, O'Donohoe, O'Connor & Stochl, New Hampton, for appellant.

Thomas J. Miller, Attorney General, Chris Odell, Assistant Attorney General, and Mark Huegel, Assistant County Attorney, for appellee State.

Kevin J. Kennedy of Kennedy and Kennedy, New Hampton, for minor children.

Heard by CADY, C.J., and SACKETT, and MAHAN, JJ.

CADY, Chief Judge.

This is an appeal by a mother, joined by the children's guardian ad litem, from an order by the juvenile court terminating a parent-child relationship. The guardian ad litem recommended against termination. We affirm the juvenile court on our de novo review.

Janet is the mother of Nicholas and Cody. Nicholas was born April 6, 1988. Cody was born August 19, 1990. The children have different fathers.

Nicholas and Cody were first removed from Janet's care in April 1994 following her involuntary commitment for substance abuse. The children were subsequently adjudicated in need of assistance based on a finding they had not received adequate care as a result of Janet's drug abuse. *See* Iowa Code

§ 232.2(6)(n) (1997). Janet had a long history of substance abuse. She became a regular narcotic user in 1985.

The children were returned to Janet's care with protective supervision and services following their removal in April. Services included outpatient substance abuse counseling. Janet was later discharged from the program for general resistance to counseling and failing to attend appointments. Janet then stopped attending AA meetings in January 1995.

In April 1995, Janet was arrested for burglary and forgery. Contrary to the terms of her pretrial release, she continued to use alcohol and was arrested for operating while intoxicated and assault in May 1995. Nicholas and Cody were then placed in foster care, where they have remained.

Janet remained in jail until July 10, 1995, when she was transferred to an inpatient substance abuse treatment program. She was discharged from the program for violating rules on September 6, 1995, and returned to jail.

In November 1995, Janet was sentenced following her conviction for a burglary charge. She was given a suspended five-year sentence and placed in a residential facility as a term of probation for approximately four months. Treatment included counseling and AA meetings.

Following her release from the residential facility, Janet tested positive for controlled substances on three occasions. This led to the revocation of her probation and incarceration in a violator's program in June 1996.

Janet failed to complete the program and was discharged in September 1996. Her probation was revoked and she was sentenced to serve her sentence of incarceration in the state penal institution.

Following a permanency hearing in January 1997, the juvenile court directed the State to file a petition for termination of parental rights. The State filed the petition in February and the case proceeded to hearing in May.

Janet remained incarcerated at the time of the hearing. Her tentative release date was January 1998. However, a prerequisite to her release on parole was the successful completion of an intensive 105–day inpatient substance abuse treatment program. Janet did not request placement in the program until she was told it was a condition of her release on parole. The program had a long waiting list and Janet had not yet been placed in the program at the time of the termination hearing. It was estimated it would take approximately one year from the time of the termination hearing for Janet to secure her release and be in a position to resume care of her children. Janet had maintained contact with the children while in prison, and was in educational courses and counseling.

The foster parents are not interested in adopting Nicholas and Cody. There was opinion testimony the children were adoptable. They have no special needs.

The juvenile court terminated Janet's parental rights under Iowa Code section 232.116(1)(e), as well as the parental rights of the fathers. The fathers do not contest the termination of their parental rights.

Janet appeals. She agrees the statutory requirements for termination have been satisfied, but asserts her close relationship with her children should preclude termination, as well as the vagueness of their adoptability. Her fighting claim, however, is the termination action was premature and she should be given a chance to prove herself as a parent after receiving the intensive treatment at the Mitchellville prison facility.

The guardian ad litem supports Janet's position. She asserts the children deserve an opportunity to see if their mother can remain drug-free after her release from prison.

Our review is de novo. *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). We first consider Janet's claim that she should be given an opportunity to successfully complete the inpatient drug program before termination is considered.

The impact of a parent's drug addiction in an action to terminate a parent-child relationship may vary from case to case. When the addiction renders the parent minimally

incapable of parenting, the impact is obvious. Yet, when the addiction does not result in a deprivation of proper parenting, termination may not necessarily be warranted. The more difficult question, however, involves those situations where, although the parent is intellectually capable to act as a parent, the addiction is so powerful that the parent persistently struggles to respond to treatment. *See In re V.M.K.,* 460 N.W.2d 191, 193 (Iowa App.1990).

Janet has a long history of drug abuse. Her addiction has resulted in a variety of problems which have, in turn, caused her to be unable to parent her children for more than two years. Nevertheless, she asks for one last chance.

We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up. *See In re M.Z.,* 481 N.W.2d 532, 536 (Iowa App.1991). We have also indicated that a good prediction of the future conduct of a parent is to look at the past conduct. *See In re C.C.,* 538 N.W.2d 664, 666 (Iowa App.1995). Thus, in considering the impact of a drug addiction, we must consider the treatment history of the parent to gauge the likelihood the parent will be in a position to parent the child in the foreseeable future. *See In re R.,* 591 So.2d 1130, 1132–33 (Fla.App.1992). Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting. *Id.*

Janet has repeatedly been unable to overcome her drug addiction. *See In re D.T.,* 221 Ga.App. 328, 471 S.E.2d 281, 283 (1996). She has been separated from her children for two years as a result of her addiction and, in the meantime, has failed to place herself in a position to enable the children to be returned to her. There is nothing to reasonably suggest Janet will overcome her addiction if the termination is delayed. She did not enroll in the drug treatment program in prison until she learned it was a precondition to her parole, and she has failed at prior treatment programs. *See Oregon v. Rollins,* 140 Or. App. 222, 914 P.2d 1094 (1996) (termination not warranted where drug addicted mother entered state corrections "boot camp" program, was fully cooperating and making a serious effort to eliminate her drug dependency).

Janet strenuously argues she does have the ability to overcome her addiction. She points out that, despite her long battle with drug addiction, she was able to successfully abstain from drugs in the past for a period of six years. She also asserts her chances of success are now better than in the past because she has been sober since her incarceration. Finally, she asks that her addiction be viewed differently than other types of conduct which render a parent unfit to retain custody of a child because it only adversely affects her parenting when she is actually using drugs. She points out the near total agreement of all interested persons in the case that she is a loving, caring mother, and would be a good parent absent her substance abuse problem.

We are not unsympathetic to Janet's struggle to maintain sobriety. Yet, the interests in permanency for Nicholas and Cody must prevail over Janet's uncertain battle with drugs. The children have been out of Janet's care too long, with no reasonable assurance of reunification at the time of the termination hearing. Moreover, we do not believe we should exercise more patience with Janet because of the nature of her problem. The rights and needs of a child for permanency are not dependent upon the type of disability which saddles the parent. *See In re M.R.,* 487 N.W.2d 99, 102 (Iowa App.1992)(teenage mother should not be allowed more time than other parents to mature and develop parenting skills).

Janet next argues the closeness of her relationship with Nicholas and Cody precludes termination. A strong bond between parent and child is a special circumstance which mitigates against termination when the statutory grounds have been satisfied. Iowa Code § 232.116(3). Yet it is not an overriding consideration, but merely a factor to consider. Moreover, there was testimony from the foster mother that the boys' relationship with their mother was diminishing

with the passage of time. We fail to find the bond between Janet and her children strong enough to forestall termination, especially considering Janet remains unable to meet the children's needs and the children are adoptable.

■ Finally, Janet claims the uncertainty of adoption justifies the continuation of her parent-child relationship. It is well established adoptability is not a precondition to termination. *In re T.C.*, 522 N.W.2d 106, 109 (Iowa App.1994). Nevertheless, there was sufficient evidence presented the children would be adopted.

We have carefully considered all the issues raised. We affirm the juvenile court.

**AFFIRMED.**

MAHAN, J., concurs.

SACKETT, J., dissents.

SACKETT, Judge (dissenting).

I dissent. I would follow the careful recommendation of the guardian ad litem and not terminate this mother's parental rights.

These children are ten and eight years old. They love their mother and are bonded to her. The majority too easily dismissed the bond and the problems inherent in severing biological ties. Furthermore, the State has done little to preserve the bond while the mother is incarcerated. While the majority finds the children adoptable, I question that finding. I am fearful the children will stay parentless in foster homes or an institution.

I recognize their mother has seriously abused alcohol and illegal substances. There currently is evidence she is making serious affirmative efforts to control her problem. While the children have suffered as a result of her addictions, she is their mother. By terminating their mother's parental rights, is the majority telling them we do not help those we love who have a problem with substance abuse, but rather we merely cut off the relationship?