# IN THE COURT OF APPEALS OF IOWA

No. 18-1420
Filed October 10, 2018

**IN THE INTEREST OF A.Z.,**
**Minor Child,**

**M.Z., Mother,**
    Appellant.

_____


Appeal from the Iowa District Court for Webster County, Angela L. Doyle,

District Associate Judge.


A mother appeals from an order terminating her parental rights pursuant to

Iowa Code chapter 232 (2018).  **AFFIRMED.**


Douglas Cook of Cook Law Office, Jewell, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney

General, for appellee State.

Sarah J. Livingston of Thatcher, Tofilon & Livingston, PLC, Fort Dodge,

guardian ad litem for minor child.


Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

A mother, Miranda, appeals from an order terminating her parental rights in her child, A.Z., pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2018). Miranda challenges the sufficiency of the evidence supporting the statutory grounds authorizing termination of her parental rights, challenges the juvenile court's determination the State made reasonable efforts to facilitate reunification of the family, and argues termination of her parental rights is not in the child's best interest. She also contends the juvenile court erred in denying her request for an additional six months' time to work toward reunification with the child.

I.

We review termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2018). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) "termination of parental rights is in the best interest[ ] of the child[ ]." *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017). Even where the State proves its case, however, the juvenile court has the discretion to preserve the parent-child relationship where the parent proves by clear and convincing evidence a statutory factor allowing preservation of the parent-child relationship. *See* Iowa Code § 232.116(3) (setting forth permissive factors to avoid the termination of parental rights); *A.S.*, 906 N.W.2d at 476 (stating it is the parent's burden to prove an exception to termination).

II.

A.

We first address the sufficiency of the evidence supporting the termination of Miranda's parental rights. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on Code section 232.116(1)(h). Miranda only challenges the evidence supporting the fourth element under section 232.116(1)(h), which requires "clear and convincing evidence the child[ ] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *Cf. E.H.*, 2017 WL 2684420, at *1.

Miranda came to the attention of The Iowa Department of Human Services (IDHS) in June 2016 due to her use of methamphetamine while caring for her two older children, who are the subjects of pending assistance cases and not at issue in this appeal. IDHS removed the children from Miranda's care but returned them to her care after Miranda successfully completed an inpatient treatment program in November 2016. After completing the inpatient treatment program, Miranda failed to maintain contact with IDHS workers and failed to comply with her outpatient treatment. She relapsed and tested positive for methamphetamine, amphetamine, and Ecstasy in December. She was quickly readmitted into the same inpatient treatment program, and the children were placed in her care. She was also pregnant with A.Z. at this time. Although Miranda was residing at the inpatient treatment facility and was pregnant with A.Z., she continued to use

controlled substances and alcohol. She tested positive for amphetamines and alcohol shortly before A.Z.'s birth in April 2017.

Throughout the pendency of this case, Miranda continued to display the same pattern of behavior. She would attend drug treatment, complete the treatment, and relapse. For a period of time, IDHS actually thought Miranda was sober, but it turned out Miranda was simply manipulating the drug test results. Miranda told her providers she circumvented the drug tests by washing her hair with dish soap prior to testing, having others wear her drug patch, and using someone else's urine for testing.

In addition to her substance abuse, Miranda failed to address other potential risks of harm to the children. She was diagnosed with bipolar disorder, major depressive disorder, and anxiety disorder among other things, but she did not engage in mental-health treatment. She continued to associate with persons who posed a risk of harm to her children. On one occasion, the police executed an arrest warrant for a known fugitive harbored at Miranda's residence. Miranda was charged as an accessory to a misdemeanor for her attempts to hide the fugitive. In addition to harboring a fugitive, Miranda had other criminals and known drug users in the home around the children.

On de novo review, we conclude the State proved the grounds for termination pursuant to section 232.116(1)(h). Miranda agreed A.Z. could not be returned to her care at the time of the termination hearing. She has not been able to demonstrate any appreciable period of sobriety since her involvement with IDHS and repeatedly placed her children in danger by caring for them while under the influence of methamphetamine. At the time of the termination hearing, the juvenile

court found the mother was not sober, stating: "Plain and simply, I don't trust that the mother is sober. . . . The Mother has very little, if any, credibility with this court. I don't trust that she's sober. I don't believe that she's sober." Because the juvenile court has the ability to observe witnesses in person and it is best suited to make credibility findings, we defer to its findings. *See In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Finally, the mother has exposed the children to an additional risk of harm by subjecting them to contact with known drug users and a fugitive. All of these things, taken together, are sufficient evidence to prove the ground authorizing the termination of Miranda's parental rights. *See In re M.M.*, No. 18-1028, 2018 WL 4361074, at *2 (Iowa Ct. App. Sept. 12, 2018) (finding exposure to known substance abuser created risk of harm to the child); *In re T.B.*, No. 18-1139, 2018 WL 4361181, at *2 (Iowa Ct. App. Sept. 12, 2018) (noting continued methamphetamine use creates a risk of adjudicatory harm); *In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018 (collecting cases determining child cannot be returned to drug-using parent).

B.

Miranda argues the State did not provide reasonable efforts to facilitate reunification of the family. However, she "does not challenge that [I]DHS did not offer the necessary supports to deal with her mental and substance[-]abuse issues." Instead, she argues the IDHS did not provide her with the "time and hope" necessary for reunification. She argues the petition was filed swiftly, showing IDHS's efforts toward reunification were not genuine. We disagree. The timing of the filing was dictated by statute and our case law. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("We have repeatedly followed the principle that the

statutory time line must be followed and children should not be forced to wait for their parent to grow up."). Here, the termination hearing occurred in June 2018, six months after removal and satisfying the statutory time line. *See* Iowa Code § 232.116(1)(h)(3) (requiring the child be removed from the parent's care for at least six months). Miranda concedes every beneficial service was provided to her. It was Miranda's decision to not avail herself of the services offered. We cannot fault the State for taking prompt action when faced with a parent who has demonstrated no sincere effort to care for her child.

### C.

We next address Miranda's contention that termination of her parental rights is not in A.Z.'s best interest. She argues termination would separate A.Z. from his older siblings. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). While there is a recognized interest in keeping siblings together, this interest does not trump other considerations when making a best-interest assessment. *See In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).

Here, the future of the sibling relationship is tenuous. A.Z. has a positive relationship with his siblings, but the future of this relationship is uncertain given that the two older siblings are also the subjects of pending assistance proceedings. It is thus uncertain whether A.Z. would remain in contact with the siblings in the future even if Miranda's parental rights were not terminated.

In contrast, A.Z. is doing well while not in Miranda's care. A.Z.'s foster parents have provided A.Z. with the support of a loving and stable home and are considering adoption. *See A.S.*, 906 N.W.2d at 475 (finding continued placement in adoptive home was in the child's best interest). The evidence does not support the finding that termination of Miranda's parental rights would in any way be detrimental to A.Z. Termination of Miranda's parental rights is in A.Z's best interest.

D.

We also conclude the juvenile court correctly denied Miranda's request for an additional six months' time to work toward reunification. Iowa Code section 232.104(2)(b) permits a court to defer permanency for six months so long as the need for removal would no longer exist at the end of the six-month period. In granting an extension of time, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal . . . will no longer exist at the end of the [extension]." Iowa Code § 232.104(2)(b). When asked by the court what steps she would take to eliminate the need for removal in six months, Miranda stated she would do "[w]hatever it takes . . . get employment, maintain [her] treatment, sobriety, take [her] tests." Given her past conduct, there is no reason to believe she was sincere.

Even if sincere, there is no reason to believe Miranda has the ability to follow through with her promises. *See T.B.*, 2018 WL 4361181, at *3 (finding parent's reliance on recent improvements unpersuasive given the parent's history of unsuccessful treatment and continued drug use). Miranda's long history of

treatment and relapse is indicative of her likely future conduct. *See A.B.*, 815 N.W.2d at 778. Given Miranda's uncertain future, we will not force A.Z. to wait for permanency. *See D.W.*, 791 N.W. at 707 ("We do not 'gamble with the child[ ]'s future' by asking them to continuously wait for a stable biological parent, particularly at such tender ages." (citation omitted)).

III.

Finding no merit to Miranda's challenges, we affirm the termination of her parental rights in A.Z.

**AFFIRMED.**