# IN THE COURT OF APPEALS OF IOWA

No. 24-1899
Filed March 5, 2025

**IN THE INTEREST OF F.S.-A., A.A., and N.A.-R.,**
**Minor Children,**

**N.A.-R., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.

A mother appeals the termination of her parental rights to three children.
**AFFIRMED.**

Heidi Miller of The Law Office of Heidi Miller, Pleasantville, for appellant mother.

Brenna Bird, Attorney General, and Lisa Jeanes, Assistant Attorney General, for appellee State.

Colin R. McCormack, Des Moines, attorney and guardian ad litem for minor children.

Considered by Chicchelly, P.J., Buller, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**VOGEL, Senior Judge.**

A mother appeals the termination of her parental rights to three of her children: F.S.A., born 2017; A.A., born 2020; and N.A.R., born 2022.[1]  Although the mother was able to obtain sobriety, she had not progressed in her ability to safely care for the children, two of which have serious medical issues.  The juvenile court found, and we agree, that the State proved the children could not be returned home and termination of the mother's parental rights is in the best interests of the children.[2]  We therefore affirm.

In October of 2022, the mother left her children, then ages four, two and nine months, home alone while she went to the store.  The two-year-old wandered out of the home and across the street, naked.  The Department of Health and Human Services (HHS) investigated and deemed founded the allegation that the mother denied critical care.  HHS then implemented a safety plan, which kept the children in the home while HHS provided oversight.  Services were also offered, including mental health treatment, domestic violence counseling, and drug screening.  Although the HHS worker suspected the mother was abusing illicit drugs, the mother failed to participate in any of the several offered drug screens.  After nearly six months of offered services, with minimal participation by the mother and increased concerns for the safety of the children, the children were removed from the mother's care.  In April 2023, the children were adjudicated in need of

---

[1] A fourth child was born in March 2024, is currently adjudicated in need of assistance but is not part of this proceeding.

[2] The children's fathers' rights were also terminated, but they did not appeal.

assistance after the mother and two of the children tested positive for drugs including methamphetamine.

As the case progressed, the mother made great strides in her sobriety. Yet she never demonstrated an ability to safely care for her children. After nearly two years of offered services, the mother was still not capable of having unsupervised visits with the children. The State petitioned for termination of the mother's parental rights, and in October 2024, the juvenile court granted the petition. The mother appeals.

## I.        Termination Under Iowa Code Section 232.116(f) and (h)

Under our well-established termination framework, parental rights may be terminated if the State proves by clear and convincing evidence (1) a statutory ground for termination, and (2) that termination is in the children's best interests. Iowa Code § 232.116(1), (2) (2024). Once the State meets those thresholds, the parent carries the burden to show that one or more statutory impediments should preclude termination. *Id.* § 232.116(3). We review the juvenile court's termination order de novo. *In re A.B.*, 957 N.W.2d 280, 293 (Iowa 2021).

The mother first challenges termination under Iowa Code section 232.116(1), paragraphs (f) (as to F.S.A. and A.A.) and (h) (as to N.A.R.). The first three elements for each ground are not in dispute—F.S.A. and A.A. were four years old or older, N.A.R. was under three years old, all children had been adjudicated in need of assistance, and all children had been removed from the mother's custody for over one and a half years. *See* Iowa Code § 232.116(1)(f)(1)–(3), (h)(1)–(3). The mother focuses on the fourth element of each subsection which—with nearly identical language—requires clear and

convincing evidence that the children cannot be returned to the custody of the mother at the present time. *See id.* § 232.116(1)(f)(4), (h)(4). In support of her position, the mother points to her sobriety and her mental-health progress. She also blames her lack of attendance at appointments for the children on their overlapping schedules and feels she could manage things better if she were allowed to manage their schedules.

The juvenile court acknowledged the mother's progress in resolving her substance use, but also detailed the many ways the mother struggled to parent the children. As to the older children, F.S.A. and A.A., the mother did not know where they attended school or daycare. She did not know who their teachers were or how they were performing. She could not identify either of their health conditions, despite both receiving ongoing medical care and A.A. undergoing heart surgery. After the mother stopped attending a safe-parenting course, she was unsuccessfully discharged. With little progress, the mother never demonstrated her ability to have the children for unsupervised visits. *In re L.H.*, 13 N.W.3d 627, 629 (Iowa Ct. App. 2024) (finding a parent "never progressed beyond fully-supervised visits, which also prevented an immediate return of custody"). The court noted the mother's inability to appropriately care for and supervise the children and found they would be subjected to further adjudicatory harm if they were returned to the mother's care at the present time. We agree with the juvenile court and affirm the termination of the mother's parental rights to F.S.A and A.A. under Iowa Code section 232.116(1)(f).

As to N.A.R., the court noted his "medically fragile" condition which requires very specialized, round-the-clock care, including a feeding tube.[3]  After much hands-on training, the mother still did not know how to safely and effectively care for N.A.R.'s daily medical needs, critical to his survival.  She missed over half of his medical appointments, and when in attendance often did not pay attention to critical care information.  As the juvenile court noted, this child "requires a parent who understands how to feed him properly, bath him properly, medicate him properly, and manage his medical equipment properly."  The court concluded the mother was neither "able [n]or willing to do so."  Because she has not progressed with her parenting to a point "where she can care for the child[ren] without ongoing assistance," *In re A.S.,* 906 N.W.2d 467, 473 (Iowa 2018), we agree with the juvenile court and affirm the termination of the mother's parental rights to N.A.R. under Iowa Code section 232.116(1)(h).

## II.     Children's Best Interests

To guide our best-interest analysis, we look to "the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child."  Iowa Code § 232.116(2).  Here, the court considered the mother's past performance and her lack of participation in services.  *See In re N.F.,* 579 N.W.2d 338, 341 (Iowa Ct. App. 1998) ("[A] good prediction of the future conduct of a parent is to look at the past conduct.").  The court noted the many unaddressed safely concerns in the

---

[3] N.A.R. requires: a gastronomy feeding tube with a prescription formula; close monitoring of his oxygen and breathing levels; a strict medication regimen; six therapy sessions per week, including physical, occupational and speech therapy; and frequent appointments with his treating specialists.

home and found the "safety concerns that led to removal continue to exist today." Having already explained N.A.R.'s fragile medical condition, and the mother's inability to safely provide for his needs, the court found his "health and safety would be at risk if returned to her care." He had been in the care of a foster family where he was thriving with "diligent" care. It then found as to all three children that their best interest would be served by terminating the mother's parental rights. We agree.

### III.    Impediment to Termination

Finally, the juvenile court found the mother "failed to present evidence" to support applying an impediment to termination. The mother carries the burden to prove any impediments to termination by clear and convincing evidence, *A.S.*, 906 N.W.2d at 476, and we agree with the juvenile court that termination would not be detrimental to the children due to the degree of closeness between them and the mother. *See* Iowa Code § 232.116(3)(c).

We therefore affirm the juvenile court's findings and affirm the termination of the mother's parental rights.

**AFFIRMED.**