Argued and submitted February 19, reversed and remanded for reconsideration
March 17, 1999

In the Matter of
Jennifer Jean Ulbricht, a Minor Child.

STATE ex rel STATE OFFICE FOR
SERVICES TO CHILDREN AND FAMILIES,
*Respondent,*

*v.*

Edward F. ULBRICHT
and Gloria Ulbricht,
*Appellants.*

(97-032J-03; CA A103224)

974 P2d 799

Theresa M. Kohlhoff filed the brief for appellant Edward F. Ulbricht.

George W. Kelly argued the cause and filed the brief for appellant Gloria Ulbricht.

Denise G. Fjordbeck, Assistant Attorney General, argued the cause and filed the brief for respondent. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Edmonds, Presiding Judge, and Armstrong, Judge, and Warren, Senior Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

This case involves the efforts of the State of Oregon to terminate the parental rights of Edward and Gloria Ulbricht to their daughter, Jennifer. ORS 419B.504(3).[1] The major issue is whether the state has proven that it is improbable that Jennifer could be integrated into the family home within a foreseeable time in light of the parents' drug addictions. The trial court entered judgment against the parents, terminating their parental rights. On appeal, they assign error to that determination as well as to the refusal of the trial court to reopen the evidentiary record of the trial. Because we conclude that the latter assignment of error is dispositive, we reverse and remand.

Edward and Gloria have serious drug addictions. Their heroin use began in 1995. Before that time, they functioned relatively well. They have two older children, J., age 12 and K., age 10. Neither J. nor K. was removed from the family home during the time that the proceedings were ongoing in this case. In January 1997, Jennifer was born and immediately taken from mother and put into foster care. At birth, Jennifer suffered from the drug usage of her mother. At age 5½ months, she had significant delays regarding gross and fine motor skills and social skills. Since that time, she has made steady progress, and by the time of the termination trial she appeared to be on track developmentally with her chronological age. According to child development experts who testified at trial, drug affected children who appear to "catch up" often fall behind again at some point and will continue to have problems with abstract reasoning and problem solving. Such children need a supportive, productive environment.

---

[1] ORS 419B.504(3) provides, in part:

"The rights of the parent or parents may be terminated * * * if the court finds that the parent or parents are unfit by reason of conduct or condition seriously detrimental to the child and integration of the child into the home of the parent or parents is improbable within a reasonable time due to conduct or conditions not likely to change. In determining such conduct and conditions, the court shall consider but is not limited to the following:

"* * * * *

"(3) Addictive or habitual use of intoxicating liquors or controlled substances to the extent that parental ability has been substantially impaired."

After Jennifer was taken into foster care in January 1997, Edward and Gloria continued to struggle with the effects of their addictions with varying results. In April 1997, the State Office for Services to Children and Families (SOSCF) decided to terminate their parental rights to Jennifer. The petition to terminate was filed in August 1997. In the meantime, Edward and Gloria continued to exercise visitation rights with Jennifer. Their interest in Jennifer is compelling. Gloria has missed only three out of more than 90 visits with Jennifer, and each absence was due to either a treatment or court date conflict. Except for their addictions, the preponderance of the evidence suggests that Edward and Gloria are "very caring, * * * very loving and very positive" parents and "very good with Jennifer."

In December 1997, Gloria tested positive for heroin. That test was the last positive urinalysis involving either parent. Also in December of 1997, Gloria was admitted to a residential treatment program, which she apparently completed. Thereafter, she was admitted to an outpatient program with the same facility. In February 1998, Gloria and Edward were accepted into a family shelter and, over a three day period, moved their belongings by using a public bus. Gloria's treatment in the outpatient program was ended by mutual agreement, and in March 1998, she began treatment with another program, treatment that was still going on at the time of the trial.

The trial was held on May 19 through 21, 1998. After hearing the evidence, the trial court took the matter under advisement. In June 1998, a fourth child, M., was born to Edward and Gloria. SOSCF filed a petition asking that the juvenile court exercise jurisdiction over M. A hearing was held on June 15, 1998, and at that hearing, a representative for SOSCF recommended that M. remain with Edward and Gloria subject to the court's supervision. The juvenile court agreed with the recommendation and ordered that M. remain with his parents.

In late June, the parents asked the trial court to reopen the evidentiary record so that they could offer evidence concerning the birth of M. and the juvenile court's ruling regarding M. SOSCF opposed the motion to reopen the evidence of the case. It said in a memorandum to the court:

"The evidence which father seeks to introduce, as petitioner understands, that mother had her baby as expected, and the SCF is moving cautiously with respect to planning for that child. Even if true and admissible, these additional facts in no way impact the overwhelming evidence which the court heard regarding the conduct and condition of these parents. One might think that the parents would appreciate petitioner's caution with respect to the newborn, but they have instead seized upon it with an underlying assumption that it demonstrates some inconsistency of SCF's part.

"Even if this evidence is true, many factors undoubtedly went into the decision regarding whether to remove the child. These would include the child's medical condition at birth, the parents' attitude toward intervention regarding this child and the obvious differences in providing care to a newborn as opposed to providing care for a child of eighteen months.

"Further, the fact that the newborn was released to the parents from the hospital does not mean that the child will remain there. SCF will undoubtedly closely monitor the newborn's situation, and act appropriately to protect her welfare.

"In summary, Jennifer should not be punished because petitioner treats her sibling's case with caution and respect for the parents."

The parents responded through a written reply memorandum. In the memorandum, they asserted that SOSCF misunderstood the purpose of the motion. They argued that the evidence was relevant on the issue of whether integration of Jennifer into the parents home would be improbable within a reasonable period of time due to conduct or conditions not likely to change. The trial court decided the motion to reopen on July 6, 1998, based on the memorandums submitted by the parties and denied the parents' motion to reopen the evidence without expressing any reason for its decision. Thereafter, the trial court entered judgment against the parents terminating their parental rights on August 3, 1998, finding by clear and convincing evidence that

the conduct and conditions which led to the petition for termination where not likely to change within the foreseeable future.[2]

■     On appeal, the parents assign error to the judgment terminating their parental rights on the ground that the evidence is not clear and convincing that they are unable to care for Jennifer within a reasonable time because of their addictions. They also assign error to the trial court's refusal to reopen the evidentiary record so that the evidence concerning the birth of M. and the SOSCF's and juvenile court's findings regarding M. could become part of the record in determining whether their parental rights should be terminated. The reopening of a case for additional evidence rests in the discretion of the trial court, and the court's decision will not be disturbed unless it has manifestly abused that discretion. *Charles*, 123 Or App at 236.[3] Here, in the absence of any explanation by the trial court as to why it exercised its discretion to deny the parents' motion, we assume that it adopted the position of SOSCF as expressed in its memorandum.

■     In its memorandum, SOSCF first argued that the evidence is so "overwhelming" that the new evidence that the parents sought to introduce would have no impact on the decision whether to terminate appellant's parental rights. To the contrary, our *de novo* review of the record under ORS 419A.200(5) indicates that whether the state has met the burden of proving its allegations by clear and convincing evidence is a close question. Second, SOSCF argued that there is a "obvious" difference in providing care to a newborn as opposed to providing care for a child at 18 months. We question the correctness of that proposition. Apparently at the

---

[2] In *State ex rel Juv. Dept. v. Charles*, 123 Or App 229, 859 P2d 1162 (1993), *rev den* 318 Or 326 (1994), we held that the trial court did not abuse its discretion in allowing the state to reopen the evidentiary record three months after closing arguments had occurred. We reasoned that the proffered evidence about events that had occurred after closing arguments was relevant to the determination of whether the mother was currently fit to care for the children who were the subject of the termination proceeding.

[3] The statute that was in effect at the time the petition for termination was filed, ORS 419B.504 (1995), used the term "forseeable future." By the time of trial, the legislature had amended it by replacing that term with "reasonable time." Or Laws 1997, ch 873, § 7.

time of trial, Jennifer had improved to the extent that she was functioning like any other 18-month-old child. Moreover, there are no factual assertions to support SOSCF's premise in the memorandum, only bald conclusions. The memorandum's other arguments carry little weight insofar as the exercise of the court's discretion is concerned. We are also mindful of the continued presence of the older children in the family home under the care of the parents throughout their addictions and of the gravity of the termination of the parent-child relationship. Termination of parental rights is a statutory procedure, and the legislature intends that children be raised by their natural parents except in those instances where the statutory requirements for termination are met.

■■      In that light, we note that the discretion of a trial court to deny the reopening of the evidentiary record is not absolute. It must be exercised in accordance with the principles of law that govern those issues and efficient judicial administration together with the opportunity for the parties to have their day in court on the issues being litigated. Here, the evidence that the parents sought to bring before the court was highly probative. OEC 401. The issue of whether a safe return of Jennifer to the family home is improbable within a reasonable time in light of the parents' addictions is the pivotal issue. The placement of M. with the parents by a court on SOSCF's recommendation comments on that issue profoundly. Under the circumstances, we hold that on the record before us, the trial court abused its discretion in refusing to reopen the evidentiary phase of the trial.

■      We conclude for the reasons stated above that this case must be remanded to the trial court so that both parties may offer evidence concerning the circumstances of M. and the juvenile court's placement of that child with the parents. Because the outcome of this case turns on the parents' abilities to provide adequate parenting to Jennifer in light of their drug addictions, the trial court should also entertain evidence of any subsequent progress or relapses that have occurred with regard to the parents' problems with controlled substances. We reiterate that when the evidentiary portion of the trial is closed, the court must adhere in making its decision to the clear and convincing evidence standard that the

legislature has imposed in regard to the statutory criteria for termination of parental rights.[4]

Reversed and remanded for reconsideration.

---

[4] Clear and convincing evidence is evidence that makes the satisfaction of the statutory requirements highly probable. *Riley Hill General Contractor v. Tandy Corp.*, 303 Or 390, 407, 737 P2d 595 (1987).