**IN THE COURT OF APPEALS OF IOWA**

No. 13-1981
Filed March 12, 2014

**IN THE INTEREST OF L.B.,**
**Minor Child,**

**S.B., Mother,**
**Appellant,**

**W.B., Father,**
**Appellant.**

_____

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

The mother and father separately appeal the juvenile court's termination of their parental rights to their child, L.B. **AFFIRMED ON BOTH APPEALS.**

Tammi Blackstone of Harrison & Dietz-Kilen, P.L.C., Des Moines, for appellant mother.

Steven E. Clarke of Clarke Law Office, West Des Moines, for appellant father.

Thomas J Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John P. Sarcone, County Attorney, and Amanda L. Johnson, Assistant County Attorney, for appellee State.

Charles Fuson of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, P.J., and Tabor and McDonald, JJ.

**VOGEL, P.J.**

The mother and father separately appeal the juvenile court's termination of their parental rights to their child, L.B.  The father asserts the State failed to prove by clear and convincing evidence grounds to terminate under Iowa Code section 232.116(1)(b), (d), (g), and (*l*) (2013).  The mother also claims the State failed to prove grounds for termination under paragraphs (d), (g), and (*l*).  Both parents contend termination was not in L.B.'s best interest.  Neither parent asserts the State failed to prove grounds to terminate under paragraph (e).  We therefore affirm the termination of both the mother's and the father's parental rights under Iowa Code section 232.116(1)(e) and affirm the juvenile court's finding that termination was in the child's best interest.

L.B. was born in December 2010.  He first came to the attention of the department of human services (DHS) because he was born while the mother was incarcerated on charges of possession of drug paraphernalia.  L.B. was placed in foster care.  Upon her release from prison in April 2011, the mother participated in services and remained sober, enabling L.B. to be returned to her care in November 2011.  However, due to the mother's and father's unresolved substance abuse issues with methamphetamine and ongoing criminal activity, the child was removed from the home in November 2012.  He was initially placed in a relative's home but was then placed in foster care.

The following services were offered to the mother and father during the pendency of the proceeding: family team meetings; post removal conferences; substance abuse evaluation and treatment; mental health evaluation; individual

therapy; probation services; parent partner; family safety, risk, and permanency services; urine analysis; and parenting classes.

The mother initially participated in some services.[1]  However, she failed to complete a substance abuse treatment course, and on December 29, 2012, her urine analysis tested positive for methamphetamine.  Her probation was revoked in mid-January 2013, prompting her to flee the county to avoid arrest.  After she was apprehended, she participated in inpatient treatment from February 2013 until March 4, 2013.  She entered a guilty plea for theft of a vehicle and was incarcerated from April 2013 until November 2013.  The mother has not seen L.B. since April 2013 and has only visited the child a total of thirteen times since he was removed from her care in November 2012.  At the time of the termination hearing, she was living with a friend pending her acceptance into the Clearview Recovery program.  However, she claims she has been sober since March 2013.

The father also relapsed with regard to his methamphetamine use in November 2012.  He subsequently lost his job, did not participate in treatment or therapy, and did not comply with the terms of his probation.  He was incarcerated during the month of December 2012 for probation violations, and upon his release was again arrested on August 7, 2013, on new criminal charges as well as a probation violation.  The father has refused to cooperate with urine analysis

---

[1] The mother has a long history with DHS.  L.B. is her fifth child.  The mother consented to termination of her parental rights with regard to her first three children.  The fourth was removed upon his birth because he tested positive for drugs when he was born.  The mother's parental rights were terminated to this child in 2009 after she refused to participate in services or visitation.  She was pregnant with her sixth child at the time of the termination hearing regarding L.B.

testing. At the time of the termination hearing he was residing in a halfway house and had not seen L.B. since May 2013.

Due to the parents' continued substance abuse and involvement in criminal activity, as well as their refusal to participate in services on a consistent basis, the State filed a petition to terminate parental rights in July 2013. A hearing was held on November 15, 2013. In an order dated December 9, 2013, the juvenile court terminated both the mother's and the father's parental rights pursuant to Iowa Code section 232.116(1)(b), (d), (e), (g), (h), and (*l*). Both parents appeal.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.* When the juvenile court terminates parental rights on more than one statutory ground, we only need to find grounds to terminate under one of the sections cited by the juvenile court to affirm. *Id.*

With regard to both the mother and the father, we conclude the State proved by clear and convincing evidence grounds to terminate parental rights pursuant to Iowa Code section 232.116(1)(e). This paragraph requires that the child has been adjudicated a child in need of assistance, has been removed from the parents' physical custody for a period of at least six consecutive months, and "[t]here is clear and convincing evidence the parents have not maintained significant and meaningful contact with the child during the previous six

consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so."[2]  *Id.* § 232.116(1)(e)(1)–(3).

Here, the father has not seen the child since May 2013, and the mother has not had contact with L.B. since April 2013.  Neither has made the effort to visit L.B., provide for him financially, or otherwise participate in services meant to reunify the family.  Even when not incarcerated, neither the mother nor father has tried to maintain contact with L.B., despite being given the opportunity to do so. It is therefore evident neither has had significant or meaningful contact with L.B.—as defined in paragraph (e)—in the past six consecutive months. Moreover, neither parent contests the adjudication under this paragraph on appeal.  Consequently, we affirm the district court's finding that the State proved by clear and convincing evidence grounds to terminate both parents' parental rights pursuant to paragraph (e).

We further agree with the juvenile court that termination is in the child's best interest.  When determining the future actions of the parents, their past conduct is instructive.  *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).  Not only have the parents refused to participate meaningfully and consistently in services offered to them, they also cannot remain sober, as evidenced by their continued use of methamphetamine.  The mother and father have had ample time and

---

[2] According to this subparagraph:

> For the purposes of this subparagraph, "significant and meaningful contact" includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent.  This affirmative duty, in addition to financial obligations, requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life.

Iowa Code § 232.116(1)(e)(3).

opportunity to correct their behavior but have failed to do so. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). We agree termination is in the child's best interests and therefore affirm the juvenile court's termination of both parent's parental rights.

**AFFIRMED ON BOTH APPEALS.**