# IN THE COURT OF APPEALS OF IOWA

No. 14-1775
Filed December 24, 2014

IN THE INTEREST OF P.B.,
    Minor Child,

F.B., Father,
    Appellant,

J.B., Mother,
    Appellant.

_____

Appeal from the Iowa District Court for Linn County, Susan Flaherty, District Associate Judge.

A mother and father separately appeal the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Ellen R. Ramsey-Kacena, Cedar Rapids, for appellant-father.

Amy R. Dollash, Office of the State Public Defender, Cedar Rapids, for appellant-mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Jerry Vander Sanden, County Attorney, and Rebecca A. Belcher, Assistant County Attorney, for appellee.

Angela M. Railsback of Railsback Law Office, Cedar Rapids, attorney and guardian ad litem for minor child.

Considered by Mullins, P.J., and Bower and McDonald, JJ.

**BOWER, J.**

A mother and father appeal the termination of their parental rights to their child, P.B. They both claim the State did not prove by clear and convincing evidence their rights should be terminated under Iowa Code sections 232.116(1)(d), (g), and (h) (2013), and the court erred in not allowing the parents additional time to pursue reunification. The father claims the court erred in finding the Iowa Department of Human Services (DHS) did not fulfill its "reasonable efforts" obligation pursuant to Iowa Code section 232.104(1)(c), and the court erred in finding termination was in the best interests of P.B. Upon our de novo review of the record, we find the juvenile court did not err in terminating the parents' rights to P.B. and we affirm.

## I.    BACKGROUND FACTS AND PROCEEDINGS

P.B. was born in 2013 at the University of Iowa Hospitals and Clinics (UIHC). J.B. is the biological mother to P.B. F.B. is the legal father to P.B. P.B.'s biological father is unknown.[1] Shortly after P.B.'s birth, UIHC contacted the DHS due to their concerns the mother and father were not demonstrating the ability to understand and respond to the needs of a newborn. A UIHC social worker provided a report to the DHS stating the parents were frequently absent from caring for their child for long periods of time. The report also mentioned the parents' lack of appropriate baby supplies at home, their mental health diagnoses, the fact the couple had their parental rights terminated to four other

---

[1] We conclude the juvenile court had the statutory authority to terminate the parental rights of F.B., the legal-but-not-biological father of P.B. *See In re J.C.*, No. 14-0288, 2014 WL 225359, at *8 (Iowa Ct. App. June 25, 2014) (holding a legal-but-not-biological father is a "parent" within the meaning of Iowa Code Chapter 232).

children, the fact two of the father's infant children had been murdered, the mother's issues with anger, and the mother's "unusual social interactions" with the father. The report also included the medical team's belief the parents' lack of involvement in P.B.'s care would be to the detriment of P.B., and if the parents behaved in the same fashion once P.B. was home it would be extremely unsafe for him.

A DHS social worker was assigned to assess the safety and welfare of P.B. if he remained in the care of his parents. Based on the parents' history with DHS, the hospital report, and the social worker's decision, P.B. was removed from the parents' care on March 20, 2013. P.B. was placed with a foster family. The foster family are relatives of the parents and are already providing care to two of P.B.'s older siblings. On April 24, an adjudication hearing was held and all parties agreed P.B. was a child in need of assistance (CINA). On May 31, a hearing was held on the guardian ad litem's motion to waive reasonable efforts, as well as a dispositional hearing. The court granted the parents more time to work toward reunification.

During the pendency of this proceeding the following services were offered: referrals for food and housing, parenting classes, family team meetings, mental health evaluations, parent partner and individual counseling, and family interaction and visitation. The providers noted continuing concerns with untreated mental health issues, parenting skills, and the cleanliness of the home. The parents had difficulty applying the learned parenting skills from one visit to another. The parents failed to follow through with their mental health needs,

even though the mother attempted suicide in 2013. The mother attended sixteen of twenty-nine mental health sessions and the father attended eight of twenty-six. Although the parents regularly attended visitations, the DHS workers saw little improvement in their ability to care for a child. Once the parents' youngest child, K.B., was born, the DHS began to curtail the parents' visitations with P.B.

After a mandatory review and permanency hearing was held on September 27, the State filed a petition for termination of parental rights. A termination hearing was held on March 28 and 29, 2014. The DHS social worker and P.B.'s guardian ad litem agreed the parents' rights should be terminated. The juvenile court issued an order on October 1, 2014, terminating the parents' rights to P.B. pursuant to Iowa Code sections 232.116 (1)(h) and (g).

The mother and father now appeal. They both claim the State did not prove by clear and convincing evidence their rights should be terminated under sections 232.116(1)(g) and (h), and the court erred in not allowing the parents additional time to pursue reunification. The father claims the court erred in finding DHS made reasonable efforts concerning P.B. pursuant to section 232.104(1)(c), and the court erred in finding termination was in the best interests of P.B.

## II.    STANDARD OF REVIEW

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be

upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. DISCUSSION

Iowa Code chapter 232, concerning the termination of parental rights, follows a three-step analysis. *P.L.*, 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

### A. Grounds for Termination

When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any ground we find supported by the record. *D.W.*, 791 N.W.2d at 707. In order to support the termination under section 232.116(1)(g), the State had to prove by clear and convincing evidence that (1) the child has been adjudicated a child to be in need of assistance pursuant to section 232.102, (2) the court has terminated parental rights with respect to another child who is a member of the same family, (3) the parent continues to lack the ability or willingness to respond to services which would

correct the situation, and (4) an additional period of rehabilitation would not correct the situation.

We agree the State proved by clear and convincing evidence the mother's and the father's parental rights should be terminated under Iowa Code section 232.116(1)(g). The record shows the first two elements of section 232.116(1)(g) have been met. Therefore we limit our analysis to elements three (respond to services) and four (rehabilitation).

In its order, the juvenile court provided an exhaustive analysis of the parents' history with the DHS. J.B.'s parental rights to her first child, with a different father, were terminated in 2001 due to her inability to care for the child. In 2011, three other children were removed from the couples' care. The reasons provided for the removal included lack of safe housing, lack of parenting skills, and unaddressed mental health issues. The DHS provided services to the parents including protective daycare; in-home services from a Family Safety, Risk, and Permanency provider; assistance with transportation; and mental health referrals. Following the removal, the DHS continued to provide assistance and services to the parents. After over a year of assistance and services by the DHS, an order was entered terminating the parents' rights to the three children. J.B. consented to the termination. F.B. resisted the termination, but termination was ultimately found to be in the children's best interest.

After P.B. was born in 2013 and removed from the parents' care, the DHS once again provided assistance and services to the parents. The social worker assigned to the case found the couple had been maintaining stable housing, J.B.

had a steady income through disability benefits, and F.B. had difficulty maintaining a job. The couple, however, maintained a regular visitation schedule with P.B., though concerns remained about the couples' ability to provide care for him. Visitation remained supervised due to issues with the amount of small items on the floor of the parents' residence that P.B. could put in his mouth, the parents' lack of attention to P.B.'s feeding cues, and the distractibility of the parents during the visitation sessions.

In March 2014, J.B. gave birth to her sixth child, K.D., at Mercy Medical Center in Cedar Rapids (Mercy). Mercy's medical staff noted the same issues with the parents' care of K.D. as the UIHC medical staff noted about the parents' care of P.B. Mercy's social worker contacted the DHS with these fears, and requested an assessment be completed concerning the safety and welfare of K.B. if he was released to the care of the parents. The DHS social worker, who had assessed the parents' after P.B.'s birth, was assigned to complete the assessment. The social worker noted the similarities in the report made by UIHC assessing the parents in 2013, and the report made by Mercy assessing the parents in 2014. Even though the DHS had been working with the parents for the past year, the Mercy report showed the same problems remained unresolved. Based on the social worker's findings, K.D. was removed from the parents' care and placed with a foster family.

The parents' have participated in DHS provided services and assistance for several years, which includes the services and assistance provided to the couple during the termination proceedings for their older children. The record

shows the same issues with the parents' ability to provide care for P.B. remain. When we must determine the future actions of the parent, past behavior is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). We commend J.B. for finding stable housing and income, but these advances are inadequate to allow the return of P.B. to the parents' care. Based on our de novo review of the record it is clear the mother and father continue to lack the ability or willingness to respond to services, and further services would not correct the situation. *See* Iowa Code § 232.116(1)(g)(3)–(4).

**B. Best Interests of the Child.**

The father claims termination is not in the best interests of P.B. because P.B. is bonded to him and P.B. resides with relatives. The father has not shown these exceptions apply in this case. *See* Iowa Code § 232.116(3). As the juvenile court found:

> J.B. and F.B.'s ability to safely care for P.B. is not likely to improve in the near future, particularly if they continue to be resistive to participating in the mental health treatment that is necessary for that improvement to occur. Returning P.B. to the parental home, with this ongoing imminent risk of harm, would be contrary to his welfare. The parents have received years of services and supports from the Department of Human Services but continue to struggle with the same issues, primarily related to their mental health. Despite years of services, they continue to have little insight.
> . . . .
> P.B. is an adoptable child. He is young and personable. P.B. lives with foster parents/relatives . . . who have adopted his older sisters . . . . P.B. is well bonded to his sisters and his current caretakers. [The foster parents] would like to adopt P.B. P.B. is in need of permanency by way of termination of parental rights and adoption is in P.B.'s best interests and that none of the exceptions

to termination as set out in section 232.116(3) apply to these proceedings.

These findings are readily apparent in the record. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). We agree with the juvenile court termination is in P.B.'s best interest, and we affirm the court's grant of the State's petition to terminate the mother's and the father's parental rights.

### C. Reasonable Efforts

The father claims the DHS did not make reasonable efforts for reunification. *See* Iowa Code § 232.102(7). The father's claims center on his requests for increased visitation and decreased supervision. As articulated above, the DHS provided years of services and assistance to the couple, and the same issues with their ability to provide care remained. The record shows the DHS provided more than reasonable efforts to the couple.

Encouragingly, we note P.B. still resides with relatives. The DHS social worker assigned to this case reported P.B. is doing well in his foster home. We see no reason to disrupt this arrangement. For the reasons listed above, we find it is in the best interests of the child to terminate the parental rights of the mother and father.

## IV. CONCLUSION

There is clear and convincing evidence that grounds for termination exist under section 232.116(1)(g), termination of the mother's and father's parental

rights is in the child's best interests pursuant to section 232.116(2), and no consequential factor weighing against termination in section 232.116(3) requires a different conclusion. Accordingly, we affirm the termination of parental rights.

**AFFIRMED.**