## IN THE COURT OF APPEALS OF IOWA

No. 15-1103
Filed October 14, 2015

**IN THE INTEREST OF P.F. and A.F.,**
**Minor Children,**

**H.F., Mother,**
　　　Appellant.

_____

　　　Appeal from the Iowa District Court for Black Hawk County, David Staudt,

Judge.


　　　A mother appeals from the order terminating her parental rights.

**AFFIRMED.**


　　　Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellant

mother.

　　　Kelly Smith of Kelly J. Smith, P.C., Waterloo, for father.

　　　Thomas J. Miller, Attorney General, Kathrine Miller-Todd and Kathryn K.

Lang, Assistant Attorneys General, Linda Fangman, County Attorney, and

Steven Halbach and Kathleen Hahn, Assistant County Attorneys, for appellee

State.

　　　Melissa Anderson Seeber of Juvenile Public Defender's Office, Waterloo,

for minor children.


　　　Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**DANILSON, Chief Judge.**

A mother appeals from the juvenile court order terminating her parental rights to her children P.F. and A.F.[1] The mother maintains she should have been given an additional six months to work towards reunification rather than have her parental rights terminated. She also maintains termination is not in the best interests of the children and termination is detrimental to the children because of the closeness of the parent-child bond. Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension, termination is in the best interests of the children, and the parent-child bond does not weigh against termination, we affirm the juvenile court's order terminating the mother's parental rights.

**I. Background Facts and Proceedings.**

A.F. was born in August 2005, and P.F. was born in in October 2006. The family's involvement with the Iowa Department of Human Services (DHS) began in late 2005, when A.F. was four months old. The family's current involvement with DHS—the sixth time a protective assessment has been completed—began in January 2014. The children were removed on January 6, 2014, due to claims both children were in the home and present during an incident of domestic violence between the mother and father. There were also allegations that both parents were using methamphetamine while supervising the children. The parents stipulated to the removal of the children.

On January 30, 2014, A.F. and P.F. were each adjudicated as a child in need of assistance. The juvenile court considered the five previous child

---

[1] The father's parental rights were also terminated. He does not appeal.

protective assessments, noting a pattern of exposure to drugs and domestic violence.

The mother was incarcerated at the Iowa Correctional Institution for Women from January 25, 2014, until February 20, 2014, when she was released to the Women's Center for Change. She was then discharged from the Women's Center for Change on July 17, 2014, so she could have surgery. The mother enrolled herself in a drug rehabilitation program in March 2014 and successfully completed the program in June 2014. She provided approximately twenty clean drug tests during this period of time and attended visits consistently. As a result, visitation was scheduled to move to semi-supervised.

On September 24, 2014, before the semi-supervised visits began, the mother tested positive for marijuana and methamphetamine. When confronted with the results, the mother self-reported that she had also relapsed and abused alcohol. The mother tested positive for the use of marijuana again on October 21. As a result, her probation was revoked, and she was incarcerated on October 28, 2014. The mother remained incarcerated until February 14, 2015.

The termination hearing was held on February 26, 2015. The mother testified she was committed to her sobriety and believed she had a positive support system in place. The mother had been diagnosed with manic depression, bipolar disorder, and issues with anger management. In the approximately two weeks after her release before the hearing, she had missed a drug test and a scheduled visit with the children. She had also cancelled and "no-showed" appointments at the mental health center. She did set up and

attend a meeting to initiate an anger management course. The mother testified that she believed A.F. and P.F. could be returned to her care if she was given an additional six months to work towards reunification.

Following the hearing, the juvenile court entered an order terminating the mother's parental rights to A.F. and P.F. pursuant to Iowa Code sections 232.116(1)(e), (f), and (*l*) (2015). The mother appeals.

## II. Standard of Review.

Our review of termination decisions is de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We give weight to the juvenile court's findings, especially assessing witness credibility, although we are not bound by them. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). An order terminating parental rights will be upheld if there is clear and convincing evidence of grounds for termination under section 232.116. *Id.* Evidence is "clear and convincing" when there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. Discussion.

### A. Statutory Grounds.

Iowa Code chapter 232 termination of parental rights follows a three-step analysis. *P.L.,* 778 N.W.2d at 39. The court must first determine whether a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination has been established, the court must apply the best-interest framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* Finally, if the statutory best-interest framework supports termination of parental rights, the

court must consider if any of the statutory exceptions set out in section 232.116(3) weigh against the termination of parental rights. *Id.*

The mother maintains the State has not proven the statutory grounds for termination by clear and convincing evidence. On appeal, we may affirm the juvenile court's termination order on any ground we find supported by clear and convincing evidence. *D.W.*, 791 N.W.2d at 707. One of the grounds upon which the juvenile court terminated the mother's parental rights to A.F. and P.F. was Iowa Code section 232.116(1)(f). The juvenile court may terminate a parent's parental rights pursuant to section 232.116(1)(f) when, at the time of the termination hearing, the child was four years of age or older, had been adjudicated a child in need of assistance, had been removed from the parent's care for at least twelve of the last eighteen months, and could not be returned to the parent's care.

At the time of the termination hearing, on February 26, 2015, A.F. was nine years old and P.F. was eight years old. They were each adjudicated as a child in need of assistance on January 30, 2014. They had been removed from the mother's care since the initial removal on January 6, 2014. The only disputed element was whether the children could be returned to the mother's care at the time of the hearing. There is clear and convincing evidence that they could not. The mother had had two periods of incarceration since the children's removal, and she had only recently been discharged from jail. She had yet to submit to drug testing and had not met with her mental health counselor. The mother was purportedly living at her sister's home, but she had stayed at three different places in the two weeks since her release from jail. She was unemployed and

could not support the children. Moreover, even before she went back to jail in October, the mother was having only supervised visits with the children.

There is clear and convincing evidence the children could not be returned to her care at the time of the termination hearing, and the grounds for termination of the mother's parental rights to A.F. and P.F. were met pursuant to section 232.116(1)(f).

**B. Best Interests.**

The mother maintains termination of her parental rights is not in the best interests of the children. We believe the record shows otherwise. Alyssa Rasmussen, the DHS caseworker assigned to the family, testified that A.F. has expressed she would like to be adopted because she no longer trusts her parents. Although the visits between the mother and children go well, the children tend to act out more both in school and their foster home after seeing their mother. The children have been exposed to a pattern of domestic violence and drugs throughout their lives; they need stability. Termination will enable A.F. and P.F. to achieve permanency. *See In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014) (citing *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially) (noting the "defining elements in a child's best interest" are the child's safety and her "need for a permanent home")).

There is clear and convincing evidence termination of the mother's parental rights is in A.F.'s and P.F.'s best interests.

**C. Permissive Factors.**

The mother maintains the closeness of the parent-child bond weighs against the termination of her parental rights. *See* Iowa Code § 232.116(3)(c).

The caseworker testified that the children share a bond with their mother, but she also questioned whether the bond was healthy. As noted above, the children tend to act more aggressively and ignore rules after a visit with their mother. They have been out of her care for more than a year. At times during that year, they were unable to have visits with her due to her incarceration. Moreover, the children have thrived in the stable environment of the foster home. We do not believe the bond between the mother and the children makes termination unnecessary in light of the children's need for permanency.

### D. Six-Month Extension.

The mother contends she should be given a six-month extension to work towards reunification with A.F. and P.F. We acknowledge the mother made positive strides between the time the children were removed in January 2014 and the termination hearing in February 2015. She recognized her relationship with the father was toxic and initiated divorce proceedings. She also successfully completed a drug rehabilitation program and was able to maintain her sobriety for approximately nine months. However, the mother relapsed on alcohol, marijuana, and methamphetamine. Additionally, much of the time she was sober was while she was incarcerated or in a residential facility. The mother admits she has been using illegal substances and battling addiction for approximately twenty years. Her nine months of sobriety during the pendency of the case is one of the longest periods she was able to maintain it. We are encouraged by the mother's desire to maintain her sobriety in the future, and we hope she is able to do so. However, at the time of the termination hearing, the mother had only been out of jail for approximately two weeks and had not been able to prove

she could maintain her sobriety outside of a structured environment. We do not believe an additional six months would allow her to establish she can remain sober in the long term. Children should not be forced to wait for their parent to be able to care for them, particularly when we have so little evidence to rely upon to believe the circumstances will be different in six months. *See In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App.1998).

Although the mother has made progress during the pendency of the case, we cannot say the issues that led to removal would no longer exist at the end of a six-month extension.

**IV. Conclusion.**

Because we cannot say the conditions that led to removal would no longer exist if the mother was granted a six-month extension, termination is in the best interests of the children, and the parent-child bond does not weigh against termination, we affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**