# IN THE COURT OF APPEALS OF IOWA

No. 15-1469
Filed December 9, 2015

IN THE INTEREST OF W.M. AND T.M.,
Minor Children,

D.M., Father,
Appellant,

C.C., Mother,
Appellant,

K.M., Grandmother,
Intervenor-Appellant.

_____

Appeal from the Iowa District Court for Appanoose County, William S. Owens, Associate Juvenile Judge.

The mother and grandmother appeal the district court's order terminating the mother's parental rights to the children W.M. and T.M., and placing custody with the Department of Human Services. **AFFIRMED ON BOTH APPEALS.**

Robert Bozwell, Centerville, for appellant father.

Amy Montgomery of Craver & Grothe, L.L.P., Centerville, for appellant mother.

Julie DeVries of DeVries Law Office, P.L.C., Centerville, for intervenor-appellant grandmother.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd and Kathryn K. Lang, Assistant Attorneys General, for appellee State.

Debra George of Griffing & George Law Firm, Centerville, attorney and guardian ad litem for minor children.

Considered by Vogel, P.J., and Vaitheswaran and Bower, JJ.

**VOGEL, Presiding Judge.**

The mother and grandmother-intervenor appeal the district court's order terminating the mother's parental rights to her children, W.M. and T.M., and placing custody of the children with the Iowa Department of Human Services (DHS), thus declining the grandmother's request the children be placed with her under a guardianship.  The mother argues the State failed to prove by clear and convincing evidence her rights should be terminated, pursuant to Iowa Code section 232.116(1)(f) and (h) (2015), and the State failed to meet its burden showing reasonable efforts were extended to reunite the family.  She further argues termination is not in the children's best interests, given the parent-child bond.  The grandmother, as the previous custodian, asserts the district court— citing the grandmother's health concerns—improperly concluded guardianship with a relative was imprudent and placed guardianship and custody of the children with DHS, pending adoption.

We conclude the State established the mother's rights should be terminated under paragraphs (f) and (h), given the children cannot be returned home due to the mother's unresolved drug use and inability to care for them. Moreover, the family having been in receipt of services since 2013, DHS has made reasonable efforts to reunite the family; however, the mother's cycle of drug abuse renders termination in the children's best interests despite the parent-child bond.  With regard to the grandmother-intervenor's argument, we conclude that, because of information disclosed during her initial home study, guardianship and custody of the children was properly placed with DHS pending adoption. Consequently, we affirm the order of the district court.

**I. Factual and Procedural Background**

T.M., born October 2010, first came to the attention of DHS in March 2013 due to allegations the mother and father[1] were abusing substances while caring for T.M.  At that time the mother was pregnant with W.M., who was born in April 2013.  On June 27, 2013, the children were adjudicated in need of assistance (CINA)—based on the mother's positive drug test for methamphetamine and alcohol—and removed from the home.  They resided with the maternal grandmother until December 1, 2014, at which time they were placed in foster care.

The mother has struggled with substance abuse since the beginning of DHS's involvement.  While she has sporadically participated in treatment, she has not completed a program, though she has had several chances to do so.  An inpatient program—offered shortly before the termination hearing—would have allowed the children to reside with the mother, but she refused to take advantage of the opportunity.  With regard to the drug screens the mother provided, she did not test positive for illegal substances, though she failed to comply with or tampered with several tests and was observed intoxicated on several occasions.

In September 2014, the mother gave birth to a third child, L.M., who tested positive at birth for methamphetamine, amphetamine, and alcohol.[2]  The baby was life-flighted to a Des Moines hospital.  At the termination hearing, the mother testified she was nine days sober and was participating in an inpatient substance

---

[1] The father's parental rights were terminated as well.  Though he filed a notice of appeal, his petition was untimely, and our supreme court ordered it to be dismissed.  Therefore, he is not part of this appeal.

[2] L.M.V. is not part of this termination proceeding.

abuse treatment program. She has never completed a mental health evaluation or attended therapy, though she testified she was about to begin mental health treatment.

The mother participated in supervised visitation with the children, but her attendance waned in early 2015. All parties agree there is a bond between her and the children, and the DHS worker opined that, if the mother were to remain sober, she could be a good parent to the children. In part due to this bond, following a permanency hearing on June 5, 2014, the district court ordered the mother be granted additional time to work towards reunification.

While the children were with the grandmother, the mother repeatedly voiced concerns that the grandmother was not a suitable placement, primarily due to health concerns that diminished her ability to care for the children, as well as the mother's unconfirmed allegations of physical abuse. DHS requested to perform a home study for pre-adoptive placement, which the grandmother eventually declined.[3] On January 8, 2015, a permanency order was entered placing the children in the guardianship and custody of DHS, and they remained in foster care at the time of the termination hearing.

The grandmother suffers from several medical issues, including sleep apnea, arthritis, high blood pressure, diabetes, gout, depression, and anxiety. At the hearing, she admitted she suffered from Crohn's disease as well. The DHS

---

[3] In its termination order, the district court referenced its earlier findings from January 2015, noting the grandmother was not forthcoming regarding the extent of her physical and mental health issues during the home study. The grandmother stated at the hearing she did not believe she had misrepresented her health problems, as she herself was not sure which medications she was taking; she further testified she withdrew her request for a home study because she believed her adoption request would be denied.

worker noted these health issues are exacerbated because the grandmother does not take care of herself and can neglect the children, as she often does not feel well enough to care for them.

The following services have been offered to the family during the pendency of these proceedings: family safety, risk, and permanency services; relative care and foster care; mental health services; substance abuse treatment, both inpatient and outpatient; parent partner program; drug testing; supervised visitation; and family team meetings. Shortly before the termination hearing, another DHS worker was assigned to the case.

On February 3, 2015, the State filed a petition to terminate the mother's parental rights. The grandmother intervened and requested the children be placed with her under a guardianship, stating her health concerns did not prevent her from caring for the children.[4] A hearing was held on April 16, 30, and May 14, 2015, in which the mother personally appeared. On August 26, 2015, the district court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f)—as to T.M.—and (h)—as to W.M. It further ordered that guardianship and custody remain with DHS for pre-adoptive placement. The mother and grandmother appeal.

## II. Standard of Review

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.*

---

[4] Despite the mother's dissatisfaction with the grandmother throughout the underlying proceedings, she requested the children be placed with the grandmother in the event her rights were terminated, as opposed to a pre-adoptive placement in foster care.

To terminate parental rights under Iowa Code section 232.116(1)(h), the State must prove by clear and convincing evidence that the child is three years old or younger, has been adjudicated CINA, removed from the home for six of the last twelve months, and cannot be returned to the custody of the child's parents as provided in section 232.102. Iowa Code § 232.116(1)(h)(1)–(4). To terminate pursuant to paragraph (f), the State must establish the child is four years of age or older, has been adjudicated CINA, has been removed from the physical custody of the parents for at least twelve of the last eighteen months, and cannot be returned to the custody of the child's parents as provided in section 232.102. *Id.* § 232.116(1)(f)(1)–(4). The mother contests only the finding, common to both subsections, that the child "cannot be returned to the custody of the child's parents as provided in section 232.102."

### III. Termination of the Mother's Rights

The mother first asserts the State failed to prove by clear and convincing evidence her rights should be terminated pursuant to Iowa Code section 232.116(1)(f) and (h), as she has demonstrated adequate parenting while with the children during supervised visits and, if she is successful in completing a drug treatment program, she could care for the children. She further argues that reasonable efforts were not made to reunite her with the children, and termination is not in their best interests.

As an initial matter, the record establishes since March 2013, DHS extended a wide variety of services tailored to reunite the mother and the children. However, she has failed to complete any substance abuse treatment, although at the time of the termination hearing she was nine days into a four-to

six-month treatment program. Nor did she request during the CINA case that she be offered more or alternative services. Consequently, her claim is not supported by the record.

Furthermore, we conclude the State proved by clear and convincing evidence termination was proper under paragraphs (f) and (h). In its opinion, the district court stated:

> At the time of the removal the department had concerns regarding [the mother's] substance abuse, and [her] supervision of [T.M.]. Based on the evidence presented the [mother is] simply no closer to addressing those problems than when [T.M.] was first removed. [The mother] has never successfully completed substance abuse treatment, gave birth to a child in October 2014 that was positive for drugs and alcohol, and testified under oath at the termination hearing she had only nine days sober.

The record fully supports the district court's findings. The mother has been in receipt of services since 2013 but has yet to show any substantial improvement. It is particularly troubling that the mother consumed alcohol and methamphetamine shortly before her third child's birth. In determining the future actions of the parent, her past conduct is instructive. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Though she had just begun treatment at the time of the termination hearing, her behavior during the previous two years gave the district court no assurances this most recent attempt would be successful. Moreover, the children have been out of the mother's care for nearly two years and are doing well in their foster placement. Given these circumstances, we conclude the State proved by clear and convincing evidence the children could not be returned home and that the mother's rights should be terminated under paragraphs (f) and (h).

It is also in the children's best interests the mother's rights be terminated. DHS has been extending services to the mother for nearly two years, and the children have yet to be returned to her care. W.M. only lived with the mother for a very short time before both children were removed from her care. While it is clear they share a bond, the mother has not demonstrated an ability to be an adequate parent. Furthermore, she has been granted extensions of time, but she has not progressed beyond even supervised visitation. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). We also find it promising the children are thriving in foster care, which was also identified as an adoptive placement option. Consequently, we conclude termination of the mother's parental rights is in the children's best interests, and we affirm the order of the district court terminating her rights.

**IV. Custody Determination**

The grandmother asserts the district court did not properly consider, pursuant to Iowa Code section 232.117(3), the impact of placing the children in the custody of DHS, as opposed to the grandmother, a biological relative.[5] She further argues that no concern regarding her home was expressed during the seventeen months in which the children were in her care, and guardianship and custody with DHS is not in the children's best interests.

---

[5] The grandmother also urges that Iowa Code section 232.118 is not an adequate mechanism for reviews of guardianships. However, this argument was not raised at the district court level, and consequently, error was not preserved. *See Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). We therefore decline to address the merits of this claim.

The children have been in the foster home since December 1, 2014. The foster parents have expressed an interest in adopting the children.[6] We agree with the district court that the guardianship and custody of the children should remain with DHS, for purposes of determining the appropriate adoptive home. The record establishes the grandmother's mental and physical health issues limit her ability to care for two very young children. Thus, placement of the children with DHS is in their best interests. As the district court noted:

> In this case . . . given the age of the children, the length of time they have been removed, the impact on the children of the current lengthy out of home placement, the parent's lack of consistency in services and visits (especially recently) a guardianship would clearly not be appropriate. It is time for [the children] to achieve permanency, and in these circumstances a guardianship is woefully inadequate to achieve the sort of stable, nurturing and permanent home they both need and deserve.

We agree with these conclusions. As stated before, the record demonstrates the grandmother has multiple health issues, which compromise her caretaking ability for these young children. Nonetheless, affirming the termination of the mother's parental rights does not rule out the possibility DHS will select the grandmother as the most appropriate person to adopt these children. This opinion only affirms that the children remain under the guardianship and custody of DHS, until the termination is final, and the adoption process can begin. Consequently, we affirm the order of the district court.

**AFFIRMED ON BOTH APPEALS.**

---

[6] The foster parents have not only W.M. and T.M. in their care, but also L.M., who was not the subject of these termination proceedings.