# IN THE COURT OF APPEALS OF IOWA

No. 20-0498
Filed September 2, 2020

**IN THE INTEREST OF B.D., S.W., and L.W.,**
**Minor Children,**

**S.W., Father of S.W. and L.W.,**
     Appellant,

**C.D., Mother,**
     Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, District Associate Judge.

A mother and father separately appeal the termination of their parental rights.  **AFFIRMED ON BOTH APPEALS.**

Amy K. Davis of Babich Goldman, P.C., Des Moines, for appellant father.

Jami J. Hagemeier of Williams & Hagemeier, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Erin Mayfield of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Bower, C.J., and May and Ahlers, JJ.

**BOWER, Chief Judge.**

Due to unresolved substance-abuse and mental-health issues, the juvenile court terminated both Courtney's and Stephen's parental rights to S.W., born in July 2009, and L.W., born in August 2010, pursuant to Iowa Code section 232.116(1)(f) (2019).[1] S.W. and L.W. are in the care of a pre-adoptive foster family. Courtney's parental rights to B.D., born January 2016, were terminated pursuant to section 232.116(1)(h).[2] B.D. is in the custody and care of her biological father, N. The parents separately appeal.

**I. Background Facts and Proceedings.**

This is the second juvenile court action involving S.W. and L.W. due to Courtney's and Stephen's long struggle with methamphetamine abuse. The first juvenile court involvement ended in August 2015 when the children and their older sister[3] were returned to the mother's care and custody after she successfully

---

[1] Iowa Code section 232.116(1)(f) allows the juvenile court to terminate a parents rights if "all of the following have occurred":
  (1) The child is four years of age or older.
  (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
  (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
  (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

[2] Section 232.116(1)(h) is nearly identical to paragraph (f), except it applies to a child who is "three years of age or younger" and only requires the child be removed "for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days."

[3] While the instant case was pending, the mother's oldest child, A., was placed with her biological father, F. She turned eighteen before the termination order was filed on March 9, 2020.

completed substance-abuse treatment. The juvenile court approved an agreement that Stephen was allowed supervised visits through the maternal grandmother until he was substance-free for six months.

On December 14, 2017, Courtney was stopped by the police while driving. Inside her vehicle were a wanted fugitive, two guns, methamphetamine, and a scale. Courtney claimed not to know about the drugs, scale, or gun in the man's possession. The fugitive backed her claim. He was arrested. Courtney continued to have frequent contact with the man and maintained an "[o]ff and on" relationship with him for almost two years.

On January 3, 2018, the police received a report two fugitives were at Courtney's home. The police located the fugitive men outside of the home. They had guns and methamphetamine. They were arrested and charged with drug possession, possession with intent to deliver, and gun violations. The fugitives told police Courtney and her children were inside the home. One of the men stated Courtney owed money for drugs.

On January 4, the older children's school asked the police to check on them because they were not at school. Officers responded to the house. The children were at home with the mother, and she claimed they were ill.

Courtney took S.W. and L.W. to Stephen, asking him to care for them because she was in the process of moving.

On January 8, the department of human services (DHS) received a child-abuse report that the mother was using and selling methamphetamine. During the subsequent child-abuse investigation, on January 11, DHS spoke with Stephen, who claimed to have last used methamphetamine a year and a half earlier. He

stated Courtney asked him to take the children due to housing issues. He reported he tried to contact Courtney the day before but was unable to reach her.

Courtney dropped B.D. off with N.'s parents at about 11:00 p.m. on January 11 and then left. On January 22, Courtney contacted DHS. She admitted she "ha[d] been smoking methamphetamines for several months daily to every other day, depending on the day." She claimed she smoked methamphetamine in the bathroom, after the kids went to bed. Courtney stated she did not have enough money to care for the children and was losing her housing so she took them to their fathers' homes. She stated she was then living with B.D.'s paternal grandparents.

DHS asked about the mother's involvement with three men who were recently arrested with methamphetamine and weapons. She claimed she did not know anything about their activities.

On February 2, the State requested the children be removed from their mother's custody. The juvenile court granted the request and placed S.W. and L.W. with Stephen, B.D. with a paternal aunt and uncle, and the oldest child in her biological father's custody.

Stephen failed to follow through with a requested drug screen on February 2 but did provide a negative drug screen on February 5. Also on February 5, DHS found the mother committed child abuse by denying the children critical care. The State filed a child-in-need-of-assistance (CINA) petition.

On February 21, after Stephen did not comply with a DHS request to provide a drug screen, it was learned his brother—who is on the sex offender registry and has an extensive criminal history—was living with Stephen. The State filed a

motion to modify S.W. and L.W.'s placement. The children were placed in foster care.

Stephen was ordered to comply with drug screening at a February 28 removal hearing. His hair tested positive for methamphetamine and amphetamine. On March 14, Stephen's sweat patch tested positive for methamphetamine.

The children were adjudicated CINA on March 20 and the out-of-home placements were continued. DHS learned Stephen's girlfriend had died of a drug overdose and recommended that he seek grief therapy.

A permanency and termination hearing was conducted over several days in February, June, July, and November 2019. The children have remained out of their parents' custody since the original removal orders, and neither parent has moved beyond supervised visitation. At the time of the November hearing, Courtney was incarcerated for probation violations. In its March 9, 2020 order terminating both parents' rights, the juvenile court succinctly summarized:

> Through two [CINA] cases spanning six years, DHS provided services for the parents to address substance abuse, mental health and instability. Those services have not worked. The father continues to use drugs. Also, he refused to participate in mental health treatment. The mother continues to use drugs. Also, she has relationships with dangerous men involved with drugs and guns. The children have been out of the mother and father Stephen's homes for more than [twenty-one] months.

On appeal, Stephen challenges the court's finding that termination of his parental rights is in the children's best interests. For her part, Courtney asserts the grounds for termination have not been met, termination of her parental rights is not in the children's best interests, and she should have been granted a six-month extension because she was deprived of requested increased visitation.

Both parents claim a statutory exception should preclude termination of their parental rights.

**II. Scope and Standard of Review.**

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). "We give weight to the factual determinations of the juvenile court but we are not bound by them. Grounds for termination must be proven by clear and convincing evidence. Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

**III. Discussion.**

We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under Iowa section 232.116(1) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (citation omitted).

*A. Grounds for termination.*

*1. Father's appeal.* The father does not contest that grounds for termination were established. Thus, we need not address this step as it concerns him. *See P.L.*, 778 N.W.2d at 40.

*2. Mother's appeal.* Concerning the respective grounds for termination found by the court, the mother concedes the first three elements of Iowa Code section 232.116(1)(f) and (h) have been established. However, she argues there

is not clear and convincing evidence that at the present time "the child[ren] cannot be returned to the custody of the child[ren]'s parents as provided in section 232.102." Iowa Code § 232.116(1)(f)(4), (h)(4). To satisfy this element, "the State was only required to prove [the children] could not be safely returned to the [parent] at the time of the termination hearing." *In re T.W.*, No. 20-0145, 2020 WL 1881115, at *1 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Courtney was in jail at the time of the November hearing awaiting a trial for alleged probation violations, and she had not yet resolved her twenty-year struggle against methamphetamine addiction. "Where the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). This element has been established by clear and convincing evidence.

*B. Termination in the best interests of the children.*

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41. Here, S.W. and L.W. have awaited stability for years. They are finally in a placement where they feel secure and settled. It is a pre-

adoptive home. B.D. is with her father, who has a supportive family, and the child is doing well. With respect to both parents, we conclude termination is in the children's best interests.

*C. Additional time to seek reunification and reasonable efforts.*

Courtney requests additional time to work toward reunification. The juvenile court may defer termination for a period of six months if it is able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b).

The mother asserts that she would soon be in treatment where the children could reside with her and emphasizes she has a close bond with them. She also maintains DHS did not provide her with adequate visitation and thus failed to make reasonable efforts to assist reunification. She argues that the failure to provide visitation is reason to grant an additional six months.

Contrary to Courtney's claim that lack of visitation was the State's failing, she routinely missed visits with the children and was required to confirm visits by 9:00 a.m. in order to have the interaction. Frequently, she did not confirm by 9:00 a.m. and reported that she felt it was too early in the morning for her to have to confirm. Her providers reminded her that she would have to be up much earlier than 9:00 a.m. if the children were returned to her care. Because she failed to timely confirm, those visits were cancelled.

Courtney's inconsistency in attending visits and the impact on the children resulted in DHS deciding not to move to semi-supervised visits. And when S.W.

and L.W. were moved to their last placement, Courtney was given the phone number but refused to speak to the care providers.

The juvenile court found reasonable efforts were made. We agree.

The legislature "has established a limited time frame for parents to demonstrate their ability to be parents." *J.E.*, 723 N.W.2d at 800. "The legislature adopted the standard in the belief that this period must be reasonably limited because, 'beyond the parameters of chapter 232, patience with parents can soon translate into intolerable hardship for their children.'" *Id.* (citation omitted). There is no reason to continue that time frame on the record before us. *See In re A.C.*, 415 N.W.2d 609, 614 (Iowa 1987) ("It is unnecessary to take from the children's future any more than is demanded by statute."). After years of waiting on the mother to address her substance-abuse and relationship issues, additional delay is not warranted.

*D. Factors that may preclude termination.*

Both parents assert an exception under Iowa Code section 232.116(3) should be considered to avoid termination. "A finding of any of [section 232.116(3)] factors allows the court to avoid terminating parental rights, but the factors 'are permissive, not mandatory.'" *A.S.*, 906 N.W.2d at 475 (citation omitted). The parent resisting termination bears the burden to establish an exception to termination under Iowa Code section 232.116(3) should be applied. *Id.* at 476.

*1. Father's appeal.* The father asserts, "The record shows that the father participated consistently in his supervised visits, and that the children interacted with the father in a positive manner." This does not qualify as "clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due

to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). No exception under section 232.116(3) applies to the father.

*2. Mother's appeal.* The mother also asserts her close relationship with the children should preclude termination of her parental rights. We acknowledge she loves her children but her unresolved issues impede her ability to parent and has negatively impacted the children and any parent-child bond that may have existed.

The mother also argues that because B.D. is placed in the father's custody, termination need not occur. *See id.* § 232.116(3)(a) ("A relative has legal custody of the child."). She claims she gets along well with N. and is capable of co-parenting with him. However, the juvenile court found: "The mother has a demonstrated pattern of being unable to parent with [N]. B.D. is in dire need of stability that can only be accomplished through termination. The court does not believe this exception to termination of parental rights is applicable." The record supports this finding.

Finding no reason to disturb the termination order, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**