## IN THE COURT OF APPEALS OF IOWA

No. 22-0002
Filed June 29, 2022

**IN THE INTEREST OF J.W.,**
**Minor Child,**

**S.W., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Kelsey Knight of Carr Law Firm, P.L.C., Des Moines, for appellant father.

Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

Shannon Leighty, Nevada, attorney and guardian ad litem for minor child.

Considered by May, P.J., and Greer and Chicchelly, JJ.

**MAY, Presiding Judge.**

A father appeals the termination of his parental rights to his child, J.W. On appeal, he challenges the statutory grounds for termination. He also argues termination is not in J.W.'s best interest.[1] We affirm.

We review termination proceedings de novo. *In re Z.P.*, 948 N.W.2d 518, 522 (Iowa 2020). "We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence." *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015) (internal citation omitted).

We generally use a three-step analysis to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We consider: (1) whether grounds for termination have been established, (2) whether termination is in the child's best interests, and (3) whether we should exercise any of the permissive exceptions to termination. *Id.* at 472–73. "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

Here, the father claims the State failed to satisfy the statutory grounds authorizing termination. The juvenile court terminated the father's parental rights pursuant to Iowa Code section 232.116(1)(e) and (f) (2021). Where, as here, the

---

[1] The father also makes passing claims that his due process and equal protection rights were violated. But he does not sufficiently develop these claims for our review. *See In re S.V.*, No. 22-0283, 2022 WL 1236963, at *2 (Iowa Ct. App. Apr. 27, 2022) ("[T]he mother only makes a passing reference to this issue. So her claim is not sufficiently developed for our review.").

juvenile court terminates under multiple statutory grounds, we may affirm on any ground satisfied. *In re J.D.*, No. 21-0391, 2021 WL 3379037, at *1 (Iowa Ct. App. Aug. 4, 2021). We choose to address paragraph (f), which authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

Iowa Code § 232.116(1)(f).

The father limits his challenge to the fourth element, whether J.W. can be safely returned to his care. *See In re T.W.*, No. 20-0145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (discussing analogous element under paragraph (h)). We agree with the juvenile court that J.W. cannot safely return to the father's care. The father has a long history of substance abuse. He described himself as a drug user for most of his life.[2]. And his drug of choice is methamphetamine. *See J.P.*, 2020 WL 110425, at *2 (recognizing a parent's methamphetamine use creates a dangerous environment for children). He admits to using the drug as recently as May 2021, just before he entered jail. And from jail the father moved to a treatment facility. At the termination hearing, he stated he left the treatment facility about a month prior after he had a stroke and posed a medical liability to the facility. So the father has had no sustained period of sobriety

---

[2] The father was fifty-nine years old at the time of the termination hearing.

outside of a controlled setting. And given his long history of substance abuse, we cannot say his methamphetamine use is at its end. *Cf. In re N.F.*, 579 N.W.2d 338, 340 (Iowa Ct. App. 1998) (noting that "[w]here the parent has been unable to rise above the addiction and experience sustained sobriety in a noncustodial setting, and establish the essential support system to maintain sobriety, there is little hope of success in parenting").

In addition to the father's history of substance abuse, J.W. cannot be around the father without suffering severe emotional distress due to the abuse and neglect she has suffered. She suffers from post-traumatic stress disorder, chronic. She describes herself as being "scared" of the father. And she refused to be in the same room as the father during a therapy intake session. When she believes her father is near, "She completely shuts down. She freezes. She asks if her dad is there. She stops breathing and holds her breath. She drops whatever she's playing with, and she becomes absolutely terrified." Even when she hears a male voice, J.W. will "freeze" and immediately ask "who's there and why they're there." And after she has had contact with the father she suffers "nightmares and [an] increase in her responses and behavior at school, such as getting out of her desk, running around, hiding under tables, and typical [to] what [therapists] would consider dysregulation or trauma responses in her behavior." So according to her therapist, J.W. and the father should not have face-to-face contact. Given these particular facts, we agree.

So J.W. could not be safely returned to the father's care, and a statutory ground for termination has been met.

The father also argues termination is not in the J.W.'s best interest. When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

We conclude termination is in J.W's best interest. J.W. is in desperate need of stability and permanency. The father cannot provide her with either. Conversely, she is in a pre-adoptive foster home where she trusts her caregivers. *See* Iowa Code § 232.116(2)(b). Her nightmares have been greatly reduced while in the foster family's care. She is also better able to process her emotions. All in all, J.W.'s mental and emotional health are improving while in the foster family's care. Accordingly, we conclude termination is in J.W's best interest.

Finally, we note the father does not argue a section 232.116(3) exception to termination applies. So we do not consider this step in our analysis.

Because the law and the facts support the juvenile court's decision, we affirm.

**AFFIRMED.**