# IN THE COURT OF APPEALS OF IOWA

————————————

No. 26-0493
Filed May 13, 2026

————————————

**In the Interest of I.T. and A.M., Minor Children,**

**K.M., Mother,**
Appellant.

————————————

Appeal from the Iowa District Court for Clinton County,
The Honorable Kimberly K. Shepherd, Judge.

————————————

**AFFIRMED**

————————————

Sara D. Davenport of Schoenthaler, Kahler, Reicks & Petersen, Maquoketa,
attorney for appellant mother.

Brenna Bird, Attorney General, and Dion D. Trowers, Assistant Attorney
General, attorneys for appellee State.

Taryn McCarthy of Clemens, Walters, Conlon, Runde & Hiatt, L.L.P.,
Dubuque, attorney and guardian ad litem for minor children.

————————————

Considered without oral argument
by Tabor, C.J., and Chicchelly and Langholz, JJ.
Opinion by Langholz, J.

1

**LANGHOLZ, Judge.**

A mother appeals the termination of her parental rights to two daughters, challenging two of the three statutory grounds for termination relied on by the juvenile court and arguing that the court should have established guardianships with their maternal grandparents rather than terminating her parental rights.[1] On our de novo review, we agree with the juvenile court. The mother waived any challenge to one of the statutory grounds for termination, so we affirm on that ground. And we agree with the juvenile court that guardianships are not in the daughters' best interests. We thus affirm the termination of the mother's parental rights.

## I.     Background Facts and Proceedings

The daughters—then three and seven years old—were removed from their mother's custody and placed with their maternal grandparents in November 2024. The Iowa Department of Health and Human Services ("HHS") had received reports two weeks before that the mother had been using methamphetamine and amphetamine while caring for her children. When an HHS worker attempted to check in on the oldest daughter at school, she was not present, and the worker learned that the daughter had been living with her maternal grandparents. The worker then visited the grandparents, and the children were not present there either. They had been staying with the grandparents "since the summer" with the mother "in and out of the home." But the mother had taken the children, a gun was missing from their house, and the grandparents did not know where they went and were

---

[1] The juvenile court also terminated the parental rights of the fathers of each daughter. They do not appeal. We avoid using the parties' names to respect their privacy because this opinion—unlike the juvenile court's orders—is public. *Compare* Iowa Code § 232.147(2) (2025), *with id.* §§ 602.4301(2), 602.5110; *see also* Iowa Ct. R. 21.25.

concerned for the children's safety. The mother had left her phone behind because "she thought people were tracking her through it." And the grandparents shared that they were concerned about the mother's substance use and mental health.

The mother returned later that night. But she "was irritable, irrational, and hard to calm down," and among other strange behaviors, she mentioned the missing gun to the worker too. She refused to participate in a safety plan for the children, drug testing, or a mental-health evaluation. Still, initially the children were allowed to stay in her custody with her agreement that she would remain with the grandparents.

Then, the morning of the emergency removal, the HHS worker learned that the mother had "not left the home and ha[d] been isolating herself due [to] thinking people [were] following her," that she had talked to the grandmother about killing herself that morning, and that she was typically left home alone with the youngest daughter about five hours per day because of the grandparents' schedules. The mother again refused a drug test. And so, HHS successfully sought an ex parte order removing the children from the mother's custody. The children were placed in HHS's custody and remained living with the grandparents; the mother had to leave the home.

For the first ten months after removal—until mid-September 2025— the mother refused to participate in any services with HHS despite repeated attempts to engage her. She had no contact with the children. And she lacked stable housing—staying with friends, in her car, and in a tent in the woods. During this time, the children were adjudicated in need of assistance.

Then in September, around the same time she became pregnant with her third child and about a month before her permanency hearing in this case,

the mother finally reached out to HHS and started some services. She began regularly participating in supervised visits with her daughters, which went reasonably well. She engaged in mental-health therapy. She participated in a substance-use evaluation but refused to sign a waiver for it to be presented to HHS or the juvenile court. She submitted to drug tests, which were all negative. Yet she admitted that she was found with methamphetamine in her purse—resulting in criminal charges that were still pending at the time of termination—but claimed the methamphetamine was not hers and belonged instead to the father of her unborn child—"a known methamphetamine user" who was with her in the car when it was found. She got a job, had moved into a shelter, and was seeking more stable housing.

Meanwhile, the daughters have been doing well in the care of their grandparents, who want to be the permanent placement for them. The daughters "are very much attached" and treat the grandparents as their parents, even sometimes calling them "Mom" and "Dad." The grandparents have also expressed "a desire to continue to support a relationship between the girls and their parents," including the mother, "so long as their parents are safe and appropriate."

The State petitioned for termination of the mother's parental rights in December. At the January 2026 termination hearing, the guardian ad litem for the daughters also supported termination. And the mother agreed that the daughters could not be returned to her custody at that time and conceded that the State had proved a ground for termination under Iowa Code section 232.116(1)(f) (2025). But she argued that the court should give her another six months to work towards reunification or establish guardianships with the children's maternal grandparents rather than terminating her parental rights.

The juvenile court found that the State had proved grounds for termination of the mother's parental rights to the daughters under paragraphs "d," "e," and "f" of Iowa Code section 232.116(1). The court also found that termination of parental rights is in the best interests of the daughters. And the court expressly considered and rejected guardianships, reasoning:

> The children are young and they have spent the past several months in a cycle of instability. The mother was missing from the lives of these children for over a year. . . . These children deserve a permanent solution that cannot be altered. Because of the age of the children and the need for stability and consistency for the children, the Court finds it is in the best interest of the children to deny the request for guardianship.

And so, the juvenile court terminated the mother's parental rights to both daughters. The mother now appeals.

## II.    Statutory Grounds for Termination

Terminating parental rights under Iowa Code chapter 232 follows a three-step process. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). First, the State must prove a statutory ground for termination. *Id.* Second, the State must show termination is in the best interest of the child. *Id.* And third, the parent has the burden to show whether a discretionary exception applies that should preclude termination. *Id.*; *see also In re A.S.*, 906 N.W.2d 467, 476 (Iowa 2018). We need not address any steps not challenged by a parent. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We review a termination decision de novo, giving "respectful consideration" to the juvenile court's factual findings, especially when based on credibility determinations. *In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

The juvenile court terminated the mother's parental rights under paragraphs "d," "e," and "f" of Iowa Code section 232.116(1). "When the

juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The mother challenges only two of the grounds for termination, conceding—as she did in the juvenile court—that the State proved a ground for termination under section 232.116(1)(f). So she has waived any challenge to that statutory ground, and we can affirm based on that ground without discussing it further. *See In re G.N.*, No. 20-1128, 2020 WL 7022388, at *1 (Iowa Ct. App. Nov. 30, 2020) (affirming based on unchallenged statutory ground and collecting cases doing the same); *see also P.L.*, 778 N.W.2d at 40 (reasoning that the appellate court did not have to analyze an unchallenged statutory ground); *In re Est. of White*, No. 23-1009, 2024 WL 3887438, at *3 (Iowa Ct. App. Aug. 21, 2024) ("The appellate court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds." (quoting 5 C.J.S. *Appeal & Error* § 839 (May 2024 update))).

## III.  Guardianship

The mother next argues that the juvenile court should have established guardianships with the children's maternal grandparents rather than terminating her parental rights.

"[A] guardianship is not a legally preferable alternative to termination." *A.S.*, 906 N.W.2d at 477 (cleaned up). It often does not "achieve permanency" or stability because the court could terminate the guardianship or change the guardian at the parent's request or on its own motion. *Id.* at 478 (cleaned up). This is especially so when a child is young, and any guardianship would leave the child in limbo for a substantial length of time and thus would be "woefully inadequate to achieve the sort of stable,

nurturing and permanent home she both needs and deserves." *Id.* (cleaned up); *see also In re B.M.*, No. 25-1408, 2026 WL 380770, at *2 (Iowa Ct. App. Feb. 11, 2026) (rejecting guardianship for elementary-school-aged son because he "deserve[d] permanency").

We thus agree with the juvenile court that guardianships would not be in the daughters' best interests. At the time of the termination hearing, they were four and eight years old. Their mother had been absent from their life for nearly a year and only recently reengaged in some supervised visitation. They were beginning to settle in well with their grandparents as potential permanent placements. And the grandparents shared their openness to maintaining a positive relationship between the daughters and the mother even if her rights were terminated. As we often stress, "children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998). And we consider what is best for the daughters—not what is most beneficial to the mother. *See* Iowa Code § 232.116(2). So guardianships that could leave the daughters in limbo for another decade or more would not achieve the stability that is in their best interests.

Thus, we affirm the juvenile court's order terminating the mother's parental rights to the daughters rather than establishing guardianships.

**AFFIRMED.**